**Hugh GIBBS, A.I.A., et al.**

v.

**The UNITED STATES.**

**Nos. 141-63, 142-63.**

United States Court of Claims.

April 15, 1966.

Rowland F. Kirks, Washington, D. C., attorney of record, for plaintiff. Garrett, Altmann & Flather, George E. Flather, Jr., Millard F. Ottman, Jr., and Andrew T. Altmann, Washington, D. C., of counsel.

Joan T. Berry, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

PER CURIAM:

These cases were referred pursuant to Rule 54(b) to Roald A. Hogenson, a Trial Commissioner of this court, with directions to make his recommendation for conclusions of law on plaintiffs' motion and defendant's cross-motion for summary judgment. The commissioner has done so in an opinion filed December 30, 1965. No notice of intention to except to the commissioner's report was filed by the plaintiffs, and the time for so filing pursuant to the rules having expired, defendant filed a motion that the commis-

sioner's opinion and recommended conclusion of law be adopted. Since the court is in agreement with the opinion and recommendation of the trial commissioner, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in these cases. Plaintiffs' motion for summary judgment is denied, defendant's cross-motion for summary judgment is granted and plaintiffs' petitions are dismissed.

OPINION OF COMMISSIONER

HOGENSON, Commissioner: These consolidated cases, each involving the same parties, are suits on two negotiated architect-engineer contracts, dated May 17, 1957, designated NBy (CH) 14607 (herein called Kaneohe contract) and NBy (CH) 14614 (herein called Waikele or Manana contract), entered into between the Department of the Navy and the plaintiffs, as a joint venture comprised of Hugh Gibbs, an individual residing at Long Beach, California, and Engineering Service Corporation, a California corporation with principal office at Los Angeles. Plaintiffs seek to recover respectively on the two contracts additional fees in the sums of $39,782 (contract 14607) and $32,008.21 (contract 14614) for performance of supervision and inspection of construction, which extended over a longer period than originally contemplated.

Following their meeting on May 10, 1957, with a Navy A & E Selection Board in Hawaii, plaintiffs were selected as the architect-engineers for the proposed 650-unit Kaneohe and 80-unit Waikele Capehart housing projects there, subject to satisfactory negotiations as to fees. Such negotiations followed in meetings on May 13 and 14, 1957, with a Navy A & E Fee Negotiation Board in Hawaii. At the May 13 meeting, plaintiffs were given a written "Scope of A & E Services" detailing the architect-engineer services required on the two projects, and also a printed contract form, "Department of the Navy Lump Sum Contract for Architectural-Engineering Services," thereafter employed in the two subject contracts. Plaintiff Gibbs, Mr. J. R.

Newville for plaintiff Engineering Service Corporation, Capt. Thomas P. Cocke, the fee board chairman, and Mr. William L. Horne, special assistant on Capehart housing matters to the Navy district public works officer, discussed in detail the work outlined in the documents. The meeting was then adjourned to the next day to permit plaintiffs to prepare their fee proposals for each project. At the May 14 meeting, plaintiffs' proposals were submitted to and accepted by the board, and on May 17, 1957, the two contracts were executed by the parties, each with the "Scope of A & E Services" attached.

There were two main categories of services to be performed by plaintiffs; (1) the design and planning of each housing project, and (2) the furnishing of supervision and inspection of the construction of each project. Each scope attached to each contract (as well as the one used in the fee negotiations) stated that the fees had to be negotiated in two parts, as follows:

a. Lump sum as full compensation for all A & E services exclusive of supervision and inspection,

b. Lump sum as full compensation for all services required for supervision and inspection should the Government require this service for the construction period.

The agreed fees for design and planning of the projects are not in issue. Each contract describes the supervision and inspection services in Article 2 thereof, stating that at the option of the Government, the architect-engineer agrees to provide "complete inspection and supervision of all work undertaken and materials furnished in accordance with the plans, drawings and specifications" prepared for the pertinent project, and further providing:

* * * If the Architect-Engineer is required to perform inspection and supervision work, he shall be responsible for ascertaining that each and every contractor has complied with such contractor's obligations to perform work and furnish materials to con-

struct the housing project and the Architect-Engineer shall perform all necessary inspection services of every kind required in connection with the supervision of construction work executed from the drawings and specifications prepared in accordance with this contract, and in performing this work, the Architect-Engineer shall comply with the instructions issued by the Officer-in-Charge. The Architect-Engineer shall furnish all technical personnel required for such inspection and supervision and shall furnish such reports, certificates and other instruments as the Government and the Federal Housing Commissioner shall require through completion of the project and acceptance by the Government. Unless otherwise specified, such inspection and supervision shall be continuous and upon a full-time basis.

Each contract by Article 4(b) states:

(b) For the performance of the work set forth in Article 2 hereof, the Contractor shall be paid the lump sum of [$66,592 was the sum agreed by the parties and inserted here in the Kaneohe contract; and $16,222 in the Waikele contract] as full compensation for all services, labor and material required for inspection and supervision; progress payments may be made for the work performed under Article 2, as work progresses, at intervals determined by the Officer in Charge. All estimates of services rendered shall be made and approved by the Officer in Charge, provided, however, that 10% of the estimated amounts may be retained until final completion and acceptance of all work covered by Article 2 of this contract. * * *

At the May 13 meeting, the discussion between plaintiffs' representatives and the fee board members included the matter of the length of time required to construct the two projects, and the agreed estimates were 15 months for Kaneohe and 6 months for Waikele. Plaintiffs used such estimates in computing the agreed inspection and supervision fees, as Captain Cocke had stated to plaintiffs they

should do, and as was disclosed by the work sheets submitted by plaintiffs to the board members at the May 14 meeting. In the fee negotiations, Captain Cocke instructed plaintiffs that they would have to propose a lump sum figure on the supervision and· inspection services, and that defendant would be paying for man-hours and would get man-hours on such work. Mr. Gibbs replied that on each project there would be full-time inspection, a full-time senior engineer on supervisory functions, and a special engineer to supervise each type of trade work, i. e., mechanical, electrical, etc., during its progress. On May 15, 1957, plaintiffs submitted to defendant a written fee proposal letter covering both the Kaneohe and Waikele projects, showing full-time supervision and inspection for the respective periods of 15 and 6 months, and the proposed and agreed fees were included in the contracts executed 2 days later.

On September 19, 1957, the A & E Fee Negotiation Board met with plaintiff Gibbs and still another officer of the other joint venturer to renegotiate the architect-engineer fees as they pertained to the Waikele project because of a proposed change in the Waikele contract. The Waikele project site was to be abandoned, and its 80 housing units combined with 168 units to be constructed near Camp Smith at a new site in Hawaii called Manana, with the resulting project totaling 248 units of Capehart housing, hereinafter called the Manana project. In negotiating the supervision and inspection fee for this new project, the conferees discussed and agreed that it would reasonably take 12 months to complete construction, and the parties negotiated the fee on this basis, each side giving consideration to the agreed supervision and inspection fee and estimated time of construction of the Kaneohe project as a guide. Plaintiffs proposed a fee of $53,-000, which amount was proportionate to the Kaneohe fee in the same ratio as the estimated construction times of the two projects of 12 and 15 months respectively. The board countered with a pro-

posed fee of $50,000, which was accepted by plaintiffs. The "Scope of A & E Services" for the Manana project contained the same provisions as that used for the Kaneohe project, as described above, and the Waikele contract was by change order converted into the Manana contract.

By "Change A," dated December 10, 1957, to the Waikele (now called Manana) contract, plaintiffs were formally notified of the resiting and inclusion of the Waikele project in the Manana project, and that plaintiffs were to accomplish all work described in the Manana "Scope of A & E Services." This change order further provided:

> 3. For the performance of the work set forth in Article 2 [quoted above] of the contract, the Contractor shall be paid the lump sum of $50,000.00 as full compensation for all services, labor and material, and taxes required for inspection and supervision of all work undertaken and materials furnished in accordance with the plans, drawings and specifications prepared under the attached Scope for the Manana Project. The fee of $16,222.00 stipulated in Article 4, Paragraph (b) of the Contract covering like services for the original Waikele project is hereby canceled and superseded. Services required by Article 2 shall be at the option of the Government.

On December 4, 1957, the defendant issued its Invitation for Bids for construction of the Kaneohe project, and it was stated therein: "The construction period is 16 months." This variation from the 15-month agreed estimate of the fee negotiation conferees is not explained in the record. On January 22, 1958, the defendant issued its Invitation for Bids for construction of the Manana project, and it was stated therein: "The construction period is twelve months."

By separate letters dated June 28, 1958, defendant formally exercised its option under Article 2 of the contracts to have plaintiffs provide the inspection and supervision services for the Kaneohe and Manana projects. Each of these letters stated in part:

> Completion date of the work under Article 2 shall coincide with the completion date of the construction operations under Contract NBy (CH) 12526. [12526 for Kaneohe, and 14616 for Manana.]

The cited contract numbers were, of course, those of the construction contracts awarded to the builders, which provided for construction of the Kaneohe project in 16 months and the Manana project in 12 months.

Plaintiffs provided inspection and supervision services for the Kaneohe project from July 1, 1958, through October 14, 1960, a period of 27½ months; and for the Manana project from July 1, 1958, through December 31, 1959, a period of 18 months, with the last 2½ months of the Manana period devoted by plaintiffs to inspection of corrective items. There is no evidence that the failure of the construction contractors to complete the projects sooner was attributable either to plaintiffs or to defendant. There is no dispute that plaintiffs furnished all of the required inspection and supervision services on the projects. Plaintiffs were paid the inspection and supervision fees of $66,592 and $50,000, provided in the A & E contracts as described above.

By letter dated July 23, 1959, plaintiffs advised defendant that the completion date for the Manana project was June 27, 1959, and although extended to October 15, 1959, it was possible that an additional extension would be required; asserted that the A & E inspection and supervision services on the project were negotiated on the basis of the original term of the construction contract; interpreted the defendant's letter of June 28, 1958 (above described), as stating that the term for the inspection and supervision services would be the same as the original term of the construction contract; stated that the plaintiffs' responsibility to provide such services had ended on June 27, 1959, and that if the defendant desired to continue such services, it would be necessary to negotiate the fee to cover the extra expense; and

suggested that since the time was not definite, during which such services would thereafter be required, a contract be negotiated wherein plaintiffs would agree to furnish inspectors and supervisors for a per diem fee based upon salaries and subsistence plus a percentage for overhead and profit, plus any out-of-pocket expense.

By another letter dated July 23, 1959, plaintiffs advised defendant that on the Kaneohe and Manana Contracts, they had billed the defendant for partial payment of inspection and supervision services on percentage of completion of the projects; stated that such billing was done on the assumption that the projects would be completed within the times provided in the construction contracts; observed that neither project would be completed on time, resulting in economic hardship to plaintiffs because they furnished sufficient inspectors to permit the construction contractors to proceed at a pace necessary to finish the projects on time, whereas both projects experienced delays during which a full staff was maintained; and requested the Navy district public works officer to change the basis of billing for partial payment under the subject contracts so that payment would be based upon a percentage of completion of the A & E contracts. Plaintiffs further stated that their Manana contract was 100 percent completed on June 27, 1959, and that their Kaneohe contract would be 78 percent complete on August 1, 1959.

By separate letters, dated August 12, 1959, defendant responded to plaintiffs' two letters, dated July 23, 1959, and stated in the first of these letters that the inspection fee of $50,000 in plaintiffs' Manana contract was full compensation for all services required for supervision and inspection for the construction period; set forth the above-quoted sentence of defendant's letter of June 28, 1958, invoking the option to employ supervision and inspection services on the Manana project; stated that "the Officer in Charge determines that the inspection fee was negotiated on the basis of total work to be done on supervision and inspection of 248 units and, therefore, payment of additional fee is not justified"; stated that contractually the time interval through which plaintiffs' performance must continue was to coincide with construction operations on the Manana project; and reminded plaintiffs that they had the right to appeal this decision under the provisions of their contract, by submitting an appeal to the office of the District public works officer within 30 days after receipt of this letter. By its second letter to plaintiffs, dated August 12, 1959, defendant summarized the decision set forth in the first letter, and with respect to plaintiffs' letter request for adjustment of the basis of billing on both the Manana and Kaneohe contracts, stated that "progress of your inspection is coincident with progress of construction and payments made to your firm must be in consonance therewith," and that there was no justification for revising the basis for determining partial payments.

There is no substantial evidence to support any finding that in a purported telephone conversation between plaintiff Gibbs and Captain Cocke, supposedly occurring just prior to the issuance by defendant of the June 28, 1958, letters, invoking the use of supervision and inspection services, that there was any understanding or agreement between them that the agreed fees for such services were limited to any period of time less than the duration of all construction operations.

Following a denial of plaintiffs' claims by defendant's contracting officer, plaintiffs timely appealed to the head of the department pursuant to the standard Disputes article of their contracts. They thereafter presented their claims for the total sum of $71,171.95 for additional supervision and inspection fees to the Armed Services Board of Contract Appeals on the theory that under the standard Changes article of their contracts, they were entitled to an equitable adjustment in the contract fees for the supervision and inspection of construction of

the pertinent projects to the extent that the construction periods exceeded 15 months for the Kaneohe project and 12 months for the Manana project.

After hearing the testimony of witnesses for the parties, receiving in evidence proffered exhibits, and entertaining the briefs of the parties, the ASBCA filed in its record of proceedings (ASBCA No. 6087) its written decision, in which the Board stated in detail the facts and circumstances in evidence, discussed at length the contentions of the parties concerning construction of the pertinent terms of the contracts, set forth the rationale of its rulings, and denied plaintiffs' appeal, 1963 BCA Decisions 18,404. The Board rejected plaintiffs' contention that the contracts should be construed to limit the agreed supervision and inspection fees to the construction periods originally contemplated, i. e., 15 months for Kaneohe and 12 months for Manana. The Board refused to find in accordance with plaintiffs' contention that at the fee negotiation meetings on May 13 and 14, 1957, the parties intended that the agreed fees were to cover only the then contemplated periods of construction, and that further fees would be allowed for any overrun of construction time. Accordingly, the Board ruled against plaintiffs' ultimate contention that they were entitled to an equitable adjustment of the contract fees on the theory that defendant by requiring plaintiffs to furnish inspection and supervision services through actual completion of the projects had required additional work within the meaning of the Changes article of the A & E contracts.

Without any trial de novo, the parties have filed their subject motions and briefs based on the duly filed certified copy of the ASBCA record of proceedings on plaintiffs' claims. Both in their petitions and in their briefs filed herein, plaintiffs allege that the Board's decision was not final because arbitrary, capricious, and not supported by substantial evidence. Obviously by way of specification of the alleged errors of the Board, plaintiffs allege and contend that at the

fee negotiation meetings, the parties "agreed" that the contract supervision and inspection fees were to be for the "agreed" construction period of 15 months for the Kaneohe project, and at first, 6 months for the Waikele, but later 12 months for the Manana project, and that such agreement (that for the contract fees plaintiffs were required to provide such services for 15 and 12 months respectively) was expressed or should have been expressed in their A & E contracts. There is no other alleged error of fact on the part of the Board.

Thus, the only basic challenge of the Board's statement of facts is the expressed refusal of the Board to find that the fee negotiation conferees intended that the agreed supervision and inspection fees were to cover only the then contemplated periods of construction, and that further fees would be allowed for any overrun of construction time.

Regarding the intentions of the fee negotiators at the May 1957 meetings, the Board stated:

* * * we find it incredible, against the background of the A & E contract provisions in regard to the scope of the inspection and supervision work which would be expected of the Architect-Engineer on each of the two Capehart projects and in regard to the fees which in each case would be paid to the latter for such work if and when performed, that either of the parties could have understood the other to have intended their fee negotiation and agreement to be concerned with a fee for some part less than—to quote from the first sentence of Article 2—"complete inspection and supervision of all work undertaken and materials furnished in accordance with the plans, drawings and specifications hereunder" which appellants were to prepare as indicated in the "Scope of A & E Services" and as provided for in Article 1 of the contracts.

* * * * * *

* * * At least as susceptible of inference from those circumstances, particularly as viewed against the aware-

ness of the parties that the A & E services under discussion were related to Capehart projects, is the view that the Government representatives, in turning the discussion to the question of a reasonable period of time for accomplishment of construction operations which might have to be inspected and supervised if the Government later chose to require this service of appellants, were seeking nothing more than a basis for evaluation of the reasonableness and justification for the fee proposals which appellants were to prepare and submit in each case as a lump sum figure.

The Board decision contains a detailed statement of the facts and circumstances attendant to the fee negotiation meetings, and indicates a careful consideration of the meaning of such facts and circumstances as they pertain to the intention of the parties regarding the meaning of the term "construction period" as used in the A & E contracts. The Board's ultimate finding that such facts and circumstances failed to establish the mutual intention claimed by the plaintiffs to have existed, is not arbitrary, not capricious, and is supported by substantial evidence before the Board.

However, the Board did reasonably find on the basis of substantial evidence that the fee negotiators agreed in the course of negotiating the respective supervision and inspection fees, that the reasonable time for construction of the Kaneohe and Manana projects would be respectively 15 and 12 months. On the basis of this established fact and the other undisputed facts, as found by the Board and as related in this opinion, and in accordance with the Wunderlich Act, 41 U.S.C. §§ 321, 322 (1964 ed.) consideration will now be given to the legal issues framed by the parties in their pleadings and briefs as to what interpretation should be placed on the contract language in dispute; Morrison-Knudsen Co. v. United States, 170 Ct.Cl. 757, 345 F.2d 833 (1965); Jansen v. United States, 170 Ct.Cl. 346, 344 F.2d 363 (1965); and whether there is a legal

basis for reforming the contracts as requested by plaintiffs. Panama Power & Light Co. v. United States, 278 F.2d 939, 150 Ct.Cl. 290 (1960); Jones & Sears, Inc. v. United States, 158 Ct.Cl. 162 (1962).

The ultimate question to be decided is whether plaintiffs contracted, under the contract provisions as properly construed, to perform the supervision and inspection services for the specified contract fees for as long as it took to complete the Kaneohe and Manana projects, or whether plaintiffs contracted to perform such services for such sums for only the contemplated periods of construction, with the understanding that if such periods were prolonged beyond the amounts of time anticipated, plaintiffs would receive additional compensation.

As quoted above, Article 2 of each contract stated that plaintiffs agreed to provide "complete inspection and supervision of all work undertaken and materials furnished in accordance with the plans, drawings and specifications" to be prepared for the pertinent project by plaintiffs. This article further required plaintiffs to furnish such inspection and supervision "through completion of the project and acceptance by the Government." Article 4(b) of each contract provided that for the work set forth in Article 2, plaintiffs would be paid "the lump sum" of [$66,592 for Kaneohe and $50,000 for Manana] "as full compensation for all services, labor and material required for inspection and supervision." Each of the scope documents attached to the contracts stated that the pertinent fees had to be negotiated as follows: "Lump sum as full compensation for all services required for supervision and inspection should the Government require this service for the construction period."

As there is no express contract provision limiting performance of such services for the specified fees to 15 or 12 months, or any other defined period of time, it seems entirely clear, with the possible exception of the words "construction period" in the last above-quoted sentence, that the contracts required

plaintiffs to perform the pertinent services for the specified fees throughout all construction operations, irrespective of their duration in time.

Plaintiffs contend, however, that the words "construction period" in the above-quoted language of the scope documents, considered with all other provisions of the contracts, should reasonably be construed to mean that the duration of plaintiffs' contract obligations to provide inspection and supervision services was 15 months for Kaneohe and 12 months for Manana, the reasonable periods of time accepted by both parties and used by them as the anticipated construction periods in negotiating the pertinent fees. Plaintiffs concede that they could not foretell how much time would transpire in actual construction operations, but contend that it is obvious that both parties anticipated that the actual and projected construction periods would coincide. Plaintiffs contend that the words "construction period" are meaningless unless their use was for the purpose of limiting plaintiffs' obligations as to the inspection and supervision services required under Article 2.

■ It is not seriously disputed that the acts and statements of the parties antecedent to and contemporaneous with the execution of the contracts are admissible under the parol evidence rule, and may be considered for the purpose of interpreting and giving meaning to the terms of an integrated contract. Corbin On Contracts, § 543 (1960). Plaintiffs rely on this principle of law and object to consideration of any circumstances other than those existing at the time of the negotiations.

What was said and done at the fee negotiation meetings has been basically detailed above. There is no evidence that any of the conferees uttered any expression as to what would be expected if construction operations exceeded the periods considered by both parties to be adequate. This lack of discussion is consistent with what the experienced plaintiffs must have realized about the nature of a fixed-price construction contract, in which with a stated time for performance the builder and owner assume the opposing risks that the time-cost factors will be increased or diminished as the actual performance time becomes more or less than that contemplated by the parties. It is also consistent with the view expressed by plaintiffs' Mr. Newville, one of the original fee negotiators on cross-examination before the Board, to the effect that the pertinent fees would not be subject to reduction if construction operations were completed in less time than contemplated by the fee negotiators. Plaintiffs had had extensive experience as architect-engineers on Capehart housing projects, although none in Hawaii, whereas the pertinent projects were the first ones on which architect-engineer inspection services had been employed by the Navy officials there. While plaintiffs emphasize that they were "directed" to use the estimated construction times in computing their fees, plaintiff Gibbs clearly testified that the defendant's conferees asked them to propose the estimates, which they did, and after considerable discussion, the parties then agreed on the reasonable estimates. Captain Cocke then stated the entirely obvious conclusion that the fees should be computed on that basis. There is no evidence that any conferee suggested any greater or lesser times than those accepted by the parties as a basis for negotiation of the fees. It is obvious as testified by plaintiff Gibbs and Captain Cocke, one of defendant's negotiators, that defendant's conferees relied heavily on the extensive experience of plaintiffs on Capehart housing projects. Thus, the basic evaluations of construction time requirements would seem to be those of the plaintiffs whose experience on construction projects had taught them the hazards of foretelling what actual construction times would be. Yet, no mention was made of escalation of the fees if actual construction was prolonged on either project.

Moreover, defendant's conferees made it plain that the pertinent fees would have to be negotiated as to each contract

as a "lump sum." Both parties were cognizant that in accordance with existing law pertaining to Capehart housing projects, 42 U.S.C. § 1594c (1952 ed., Supp. IV), the construction contractor would be required to reimburse defendant the amounts of the architect-engineer fees, and that the defendant's invitation for bids for construction of each project would set forth the amounts of such fees, with instructions to the effect that such fees should be included in the construction contract bids as an element of costs. The conferees were also aware that there was a statutory limit of an average of $16,500 per unit on expenditures by defendant on the construction of any Capehart housing project. 12 U.S.C. § 1748b(b) (1952 ed., Supp. IV). These circumstances strongly infer that there was no intention on the part of the conferees that the pertinent fees would be increased in the event of prolonged construction operations, but rather that such an eventuality was a risk inherent in the contract obligations.

It is concluded that the words "construction period," considered with all other terms of the contracts in the light of the acts and statements of the parties antecedent to and contemporaneous with the making of the contracts, cannot reasonably be construed as contended by plaintiffs, and that the clear language of the contracts must prevail that the parties intended that the stated inspection and supervision fees covered all construction operations, irrespective of their duration.

Reformation of a contract is proper when the written words of a contract fail to express the prior mutual agreement of the parties. If the parties fail adequately to express their agreement, the court should reform the contract. Panama Power & Light Co. v. United States, supra; Jones & Sears, Inc. v. United States, supra; Corbin On Contracts, §§ 540, 614 (1960). However, the foregoing analysis of the facts and circumstances antecedent to and contemporaneous with the making of the contracts, demonstrates that plaintiffs have not established a legal basis for reformation of the contracts.

It is my conclusion that plaintiffs' motion for summary judgment should be denied, that defendant's cross-motion for summary judgment should be granted, and that judgment should be entered that plaintiffs' petitions are dismissed.