**McABEE CONSTRUCTION, INC., Plaintiff–Appellee,**

v.

**The UNITED STATES, Defendant–Appellant.**

No. 96–5004.

United States Court of Appeals, Federal Circuit.

Oct. 8, 1996.

Rehearing Denied; Suggestion for Rehearing In Banc Declined Nov. 13, 1996.

---

Isaac P. Espy, Espy, Nettles and Scogin, P.C., Tuscaloosa, AL, argued, for plaintiff-appellee. With him on the brief was Laurie A. Brantley. Of counsel was Mark A. Scogin.

Luis M. Matos, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, argued, for defendant-appellant. With him on the brief were

Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Sharon Y. Eubanks, Deputy Director. Of counsel on the brief was Gary A. Moore, U.S. Army Corps of Engineers, Mobile, AL.

Before NEWMAN, MAYER, and RADER, Circuit Judges.

MAYER, Circuit Judge.

The United States appeals the judgment of the United States Court of Federal Claims, No. 94–274 C (Aug. 16, 1995), awarding McAbee Construction, Inc. damages for the diminished value of its property caused by the breach of an easement it had granted to the United States Army Corps of Engineers. Because the finding of a breach was based on an erroneous interpretation of the easement, we reverse.

*Background*

In 1983, the Corps of Engineers announced plans to replace the William Bacon Oliver Lock and Dam in Tuscaloosa, Alabama (the "project"). As part of the project, the Corps had to acquire real estate for use as a disposal site for dredged and excavated material. In March of 1986, the Corps approached McAbee Construction, Inc. about acquiring an interest in certain parcels of land that McAbee owned. Several months of negotiations and meetings ensued, at least some of which McAbee's counsel attended. In September 1986, the Corps secured a five-year easement ("easement" or "contract") from McAbee to meet its disposal needs.

The easement permitted the Corps "to deposit fill, spoil and waste material [on McAbee's land] ... and to perform any other work necessary and incident to the construction of the [project]." It also contained an integration clause, which provided that "[a]ll terms and conditions with respect to this [contract] are expressly contained herein and [McAbee] agrees that no representative or agent of the United States ha[s] made any representation or promise with respect to this [contract] not expressly contained herein."

After the easement expired and the land reverted, McAbee submitted a claim to the Corps for $922,500 in damages caused by depositing an allegedly "excessive" amount of spoil material on its land. The Corps did not respond to the claim, and McAbee filed suit in the United States District Court for the Northern District of Alabama under the Federal Tort Claims Act. McAbee alleged that the Corps had negligently or wrongfully deposited more than 200,000 cubic yards of dirt and waste "in excess of its authority," thereby committing trespass and waste.

The government moved to dismiss for lack of jurisdiction or to transfer the case to the Court of Federal Claims, arguing that it was a contract action in excess of $10,000, over which that court has exclusive jurisdiction. The court denied the motion, and the government appealed. We reversed and remanded with instructions to transfer the case. *McAbee Constr., Inc. v. United States*, 22 F.3d 1106 (Fed.Cir.1994) (table).

The trial court found that the elevation of the tract ranged from approximately 135 to 160 feet above mean sea level before the easement. McAbee argued that the parties had agreed that the Corps could place 15 to 20 feet of fill on the tract over the life of the easement and that the top elevation would be 165 feet above mean sea level when the easement expired. The court recognized that the contract did not include a specific height limitation, but it held that "[t]he missing height restriction term create[d] an ambiguity." It therefore resorted to extrinsic evidence to hold that the Corps had agreed to return the property at an elevation no higher than 165 feet. Returning the property at an elevation of 183 feet was a breach. It awarded McAbee $328,000 for the diminution in fair market value of the property. This appeal followed.

*Discussion*

■ The first question is whether the contract was fully integrated. McAbee argues that neither party intended for the "easement to be the final, exclusive statement of all of their agreements"; the easement was only partially integrated. Thus, it contends that the court's reliance on extrinsic evidence to hold that the contract contained a specific

height limitation did not run afoul of the parol evidence rule. We disagree.

 McAbee is correct that the Court of Claims, whose decisions bind us unless we overrule them in banc, *see South Corp. v. United States,* 690 F.2d 1368, 1370–71 & n. 2 (Fed.Cir.1982) (in banc), held that parol evidence "must be admissible on the issue of the extent to which a written agreement is integrated, for ... the writing cannot prove its own integration." *Sylvania Elec. Prods., Inc. v. United States,* 198 Ct.Cl. 106, 458 F.2d 994, 1006 (1972); *see also David Nassif Assocs. v. United States,* 214 Ct.Cl. 407, 557 F.2d 249, 256 (1977). Thus, it is not only the writing that controls whether the document is fully integrated, but also the circumstances surrounding its execution. *Nassif,* 557 F.2d at 256.

The parties here explicitly stated that the contract was fully integrated; that is, they agreed that all of its terms and conditions were "expressly contained" within the four corners of the easement itself. As if that provision were not sufficiently clear, McAbee agreed further that no representative or agent of the United States had made any representation or promise that was not expressly contained in the contract. So McAbee carries an extremely heavy burden in overcoming this attestation to the document's finality and completeness. *See Campbell v. United States,* 228 Ct.Cl. 661, 661 F.2d 209, 218 (1981) (where contract includes an integration clause, "it is a fair bet that the parties agreed to no more than they said"); *Nassif,* 557 F.2d at 256 (extrinsic evidence is "especially pertinent in instances where ... the writing itself contains no recitals or other evidence testifying to its intended completeness and finality"); Restatement (Second) of Contracts § 216 cmt. e (1981) (existence of integration clause is "likely to conclude the issue whether the agreement is completely integrated").

McAbee has pointed to no extrinsic evidence that supports its assertion that the contract was not fully integrated. The available parol evidence comports with the substance of the integration clause. The execution of the agreement concluded several months of negotiations between the Corps and McAbee, during which they discussed the elevation at which the Corps would return the property. Indeed, during negotiations, McAbee requested that the parties enter into a "statement of understanding" that included a height limitation, yet there is none. McAbee should have requested that the integration clause be stricken or modified if the agreement did not expressly address all of the issues on which the parties had agreed.

Of course, the parties could have expressly incorporated any documentary or other evidence of the alleged height limitation agreement into the contract via the integration clause itself. But the contract contains no references to any external documents or agreements. *See United States v. Winstar Corp.,* — U.S. —, —– —, —, 116 S.Ct. 2432, 2448–53, 2472, 135 L.Ed.2d 964 (1996) (giving effect to contract integration clauses incorporating extrinsic documents as part of the contract). Because of the strong presumption that the contract was, as it purported to be, a fully-integrated agreement, coupled with the consistency of the evidence surrounding its execution with that presumption, we conclude that the agreement was fully integrated. Consequently, the parol evidence rule prohibits the use of extrinsic evidence to add to or to modify its terms. *Nassif,* 557 F.2d at 256.

 Even if the contract were only partially integrated, McAbee would be permitted to introduce parol evidence only to supplement the "agreement by consistent additional terms." *See Sylvania,* 458 F.2d at 1005; *see also* Restatement (Second) of Contracts §§ 210 cmt. a, 213 cmt. c. However, it wants parol evidence to interpret the "necessary and incident" language of the contract. Consequently, whether the contract was fully integrated is really of no moment to McAbee, for its argument hinges upon whether the contract was ambiguous. Only then could the court resort to extrinsic evidence to inform its interpretation of that provision, regardless of whether the contract was fully integrated. *See Sylvania,* 458 F.2d at 1005.

 We turn, therefore, to the other issue in the case: whether the terms of the contract read as a whole are ambiguous,

 

whether they are susceptible to more than one reasonable interpretation. *See Grumman Data Sys. Corp. v. Dalton,* 88 F.3d 990, 997 (Fed.Cir.1996). We begin with the plain language. *Foley Co. v. United States,* 11 F.3d 1032, 1034 (Fed.Cir.1993); *see also C. Sanchez and Son, Inc. v. United States,* 6 F.3d 1539, 1543 (Fed.Cir.1993) ("A contract is read in accordance with its express terms and the plain meaning thereof."). We must interpret the contract in a manner that gives meaning to all of its provisions and makes sense. *Hughes Communications Galaxy, Inc. v. United States,* 998 F.2d 953, 958 (Fed.Cir.1993). Thus, if the "provisions are clear and unambiguous, they must be given their plain and ordinary meaning," *Alaska Lumber & Pulp Co. v. Madigan,* 2 F.3d 389, 392 (Fed.Cir.1993), and the court may not resort to extrinsic evidence to interpret them. *Interwest Constr.,* 29 F.3d at 615 ("[E]xtrinsic evidence ... should not be used to introduce an ambiguity where none exists."); *Beta Sys., Inc. v. United States,* 838 F.2d 1179, 1183 (Fed.Cir.1988) ("[E]xtrinsic evidence will not be received to change the terms of a contract that is clear on its face."). To permit otherwise would cast "a long shadow of uncertainty over all transactions" and contracts. *Trident Ctr. v. Connecticut Gen. Life Ins. Co.,* 847 F.2d 564, 569 (9th Cir.1988) (criticizing the California approach, which does not follow the traditional principle that extrinsic evidence is inadmissible to interpret, vary, or add to the terms of an unambiguous integrated instrument).

■ The language of the easement expressly permitted the Corps to deposit fill and waste on McAbee's land, and to perform any other work on the tract as long as it was "necessary and incident" to the project. There is nothing ambiguous about this. The terms are not susceptible of more than one reasonable interpretation. Nowhere in the contract did the parties agree that the Corps was only permitted to dump a specified amount of waste on McAbee's land. Nor did they agree that upon termination of the easement the Corps was required to return the property at a specified elevation. The only

possible limitation on the amount of waste that the Corps could deposit was its character or source, not its amount or height. Consequently, the trial court's conclusion that the absence of a height restriction created an ambiguity is incorrect.*

McAbee does not argue that the Corps deposited any material unrelated to the project, only that the court permissibly relied on extrinsic evidence to give meaning to the contract's "necessary and incident" language. But, that simply is not what the court did. It relied on parol evidence because it concluded that the agreement was ambiguous in the absence of a height limitation. Under McAbee's interpretation, the Corps was permitted to dump whatever fill was "necessary" to the project, but only to a certain limit. Upon reaching this silent limit, the Corps would have to cease work. This strips the provision of its plain meaning, and we reject it. *See Gibbs v. United States,* 175 Ct.Cl. 411, 358 F.2d 972, 980 (1966) (interpretation of a contract term was unreasonable, so the "clear language ... must prevail").

### Conclusion

Accordingly, the judgment of the United States Court of Federal Claims is reversed.

---

* The court also cited *C. Sanchez and Son* for the proposition that when a matter in dispute is not expressly addressed in the contract, it must determine whether a proffered interpretation is reasonable. That principle does not apply here because the contract was not silent; it was fully integrated, and there was no height restriction.