ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of --                              )
                                          )
Aero Tech Services Associates, Inc.       )          ASBCA No. 61682
                                          )
Under Contract No. FA8106-17-D-0009       )

APPEARANCE FOR THE APPELLANT:         Deborah Appel, Esq.
                                        Law Office of Deborah Appel
                                        Bronx, NY

APPEARANCES FOR THE GOVERNMENT:       Jeffrey P. Hildebrandt, Esq.
                                        Air Force Deputy Chief Trial Attorney
                                      Isabelle P. Cutting, Esq.
                                      Capt Jacquelyn C. Fiorello, USAF
                                        Trial Attorneys

OPINION BY ADMINISTRATIVE JUDGE THRASHER

        Aero Tech Services Associates, Inc. (ATSA) seeks reimbursement for labor costs
incurred under Contract No. FA8106-l7-D-0009 ("0009 Contract") in logistical
support of two E-9A aircraft at Tyndall Air Force Base, Florida.  ATSA's claim is
that the fixed hourly labor rate to repair or replace aircraft parts, which applies to
"subcontractors" under "Over & Above" (O & A) contract line item numbers (CLIN)
X007AA, does not apply to "vendors".  Rather, ATSA's position is that any labor hourly
charges are part of the "material cost" for which ATSA is entitled to full reimbursement
under CLIN 007AC.  We deny the appeal.

FINDINGS OF FACT

*Background*

        1.  The 82nd Aerial Targets Squadron at Tyndall Air Force Base, Florida
employs two E-9A aircraft whose primary mission is to act as a surveillance
platform to ensure the Gulf of Mexico waters are clear of civilian boaters and
aircraft during live missile launches and other hazardous military activities within
the test range (R4, tab 6 at 53-54).  These aircraft are maintained by contractor-
provided logistics.  Relevant to this appeal, the contractor-provided logistics
support for these aircrafts, which includes over and above (O & A) tasks,
engineering services including development, test and FAA certification of modifications,
and installation of modifications and depot maintenance support (*id.* at 53).  "O & A
Charges are Government directed tasks within [the] scope of the contract but not

specifically forecasted such as; [sic] bird strikes, lightning strikes, FOD [(foreign object damage)], dropped or damaged components," and other government directed actions (R4, tab 6 at 14). ATSA currently provides this support under the 0009 contract.

2. This dispute arises out of a specific O & A situation when the appellant cannot repair or replace an item in-house and must remove the item and send it to an outside contractor for repair or replacement. Upon return of the item to appellant, the outside contractor will invoice appellant either charging a fixed labor rate or a total price encompassing both labor and material with no visibility or breakout of the amount or time or labor involved (tr. 22-23). Appellant refers to the outside contractor in these situations as a "vendor", not a subcontractor, insisting that a "vendor" is distinguishable from a subcontractor and vendor charges are reimbursable as part of "material costs" under CLIN X007AC (app br. at 2). The end result being, appellant would be fully reimbursed for all labor costs.

3. In contrast, the government argues there is no separate "vendor" category under the contract because the term vendor is defined within the definition of subcontractor (gov't br. at 8). Therefore in these situations, the contract's hourly rate, whether disclosed or not, is capped by CLIN X007 at the hourly labor rate in the contract (*id.* at 6). Likewise, the government argues that material costs proposed by the contractor may not include labor costs (*id.* at 7).

*Comparison between the Previous Contract and the 0009 Contract Follow-on Solicitation*

4. ATSA performed these logistics services for six years under the previous contract, Contract No. FA8106-11-C-0004 (0004 contract) (R4, tab 1). On August 4, 2016, the Air Force issued a request for proposals (RFP) for a follow-on contract under Solicitation No. FA8106-16-R-0008 (R4, tab 6 at 1). Relevant here, the government substantially changed the acquisition strategy related to the O & A pricing, converting the 0004 contract prime and subcontract O & A CLINs from cost to fixed price CLINs. Major Toyama, the lead contracting officer on the source selection, testified that the O & A 0004 contract prime and subcontractor costs for CLIN 0007 was converted into a firm fixed price CLIN in the 0009 contract based upon historical data from the previous six year contract. (Tr. 59-60)

5. By way of comparison, the 0004 contract included an O & A subcontracting mark-up rate. This fixed subcontract pass-through mark-up factor represented the administrative costs of obtaining the subcontract effort, including all indirect costs plus fee associated with obtaining the subcontract effort. The fixed subcontract pass-through mark-up factor was then added to the price paid by the

2

contractor to the outside contractor to determine a fixed price amount for the subcontract effort. (R4, tab 1 at 12) The net effect of this clause was to fully reimburse the contractor for subcontractor services: the amount charged to the contractor for the subcontract service, plus an administrative fee (fixed subcontract pass-through mark-up factor) for obtaining the subcontractor effort. In contrast, the follow-on contract solicitation established a single fixed O & A labor rate, proposed by the offerors that applied to the prime contractor and all subcontractors, eliminating the subcontracting mark-up rate found in the 0004 contract (R4, tab 6 at 15, 140-41). This effectively converted what had been a cost reimbursable clause for the complete cost paid the subcontractor for its services to a fixed price clause based upon the proposed fixed labor rates.

6. The follow-on solicitation required all proposed pricing to be submitted in a Pricing Matrix that would be incorporated into the contract (R4, tab 57 at 12). The 10 different O & A labor rates found in the 0004 contract were reduced to only two: a single labor rate for work hours and a single O & A labor rate for overtime (R4, tab 1 at 198, tab 6 at 140).

7. Additionally, the follow-on solicitation flagged the change in pricing strategy warning the offerors of the additional cost risk from subcontractors and *vendors* [*emphasis added*] in out years, stating:

> *Offerors are strongly advised to seriously note risk for firm fixed pricing in contract out-years. Such risk is considered contractor risk and not risk to the Government.* Proposed pricing shall be sufficient to cover such contractor risk of future unknowns, such as subcontractor rate increases in contract out-years, as well as material cost increases in out-years or potential changes in teaming with specific *subcontractors/vendors*. This also includes unanticipated changes in *subcontractors' or vendors'* [*emphasis added*] pricing in the out-years. For example, as out-year performance periods are reached over time, subcontractor pricing (on which these originally proposed fixed wrap rates are based) could change. As a result, future subcontractor pricing may not correspond with the original proposed FFP rates. Revision of proposed firm fixed pricing will not be accepted by the Government to cover any additional costs in the future out-years. Offerors shall be held to their originally proposed pricing, i.e., FFP rates for all CLINs.

(R4, tab 57 at 17) (emphasis added)

*ATSA's Follow-on Contract Proposal*

8. ATSA submitted its final proposal revision on May 8, 2017 (R4, tab 5 at 1). Mr. Christopher Bloomer, Vice President of Operations for ATSA testified he helped prepare the proposal on this contract and has been working on the contract since September 2017 (tr. 23). He also testified he read the language in CLIN 0007 of the solicitation that states all rates apply to prime contractors and all subcontractors but noted the proposal did not include subcontractors performing work on this contract because of the distinction the industry makes between subcontractors and vendors (tr. 25-28).

9. ATSA's proposal reflects the distinction ATSA makes between "subcontractors" and "vendors". Both the technical volume and pricing volume of ATSA's proposal state that 100% of all work will be done by ATSA i.e., not subcontractors, but then provided a list of twelve key "vendors" (R4, tab 5 at 2, 77). For example, section 2 of the pricing volume is entitled SUBCONTRACTOR AND VENDOR PRICING" (*id.* at 78). That section explains why ATSA decided not to use, what they consider, subcontractors on this contract but clearly states when it is required to go out to a vendor for completion of a specific task it will enter into a subcontract relationship to accomplish the work, stating, "Each of the key vendors identified will be subcontracted to support the identified tasks as required." (R4, tab 5 at 100-01)

10. The government awarded the 0009 contract to ATSA on May 31, 2017 (R4, tab 6 at 1). Shortly thereafter, ATSA entered into a contract agreement with Pratt & Whitney (P & W), effective September 1, 2017. The contract agreement refers to the contract relationship between the parties as a "SUBCONTRACT AGREEMENT" (R4 tab 53 at 5). Accordingly, we find that P & W was a subcontractor to ATSA under its contract with the government.

*Relevant 0009 Contract Provisions*

11. Three of the contract's O & A provisions are relevant to this appeal:

CLIN X007-OVER AND ABOVE WORK PROCEDURES

(a) Over and Above Labor Rates (Fixed Hourly): *The price negotiated by the PCO/ACO shall be based on "hands on" labor hours multiplied by the contract fixed hourly rate.* The number of "hands on" labor hours required shall be negotiated between the contractor and the PCO/ACO. "Hands on" labor hours to be used in negotiated fixed hourly rate items are restricted to those defined below. The fixed

4

hourly rate includes charges for: "hands on" labor cost; any labor cost not included in the definition of "hands on" labor for which the contractor accounts as direct labor; burdens; general and administrative expenses; and other allowable costs and profit. The fixed hourly rate does not include direct parts and materials.

For the purposes of negotiating prices for the fixed hourly rate items, the "hands on" labor hours to which the fixed hourly rate is applied, are limited to only that labor performed by personnel actually engaged in the direct performance of work required. "Hands on" labor shall not include any labor performed by support of supervisory type personnel, such as, but not limited to: timekeepers, payroll clerks, purchasing, material handling, quality control, storing and issuing personnel. Quality control personnel are considered as those personnel who apply standards to finished work/products to determine that finish production work is serviceable in all respects.

(b) Material Handling Rate Items: *The price negotiated by the PCO/ACO shall be based on material proposed multiplied by the contract fixed material handling rate.* The material required shall be negotiated between the contractor and the PCO/ACO. *"Materials" are those parts or materials purchased, supplied, manufactured, or fabricated by the Contractor for the sole purpose of incorporating them into or making them a part of the end products or components thereof covered by this contract.* The Material Handling Rate includes charges for: burdens; general and administrative expenses; and other allowable costs and profit.

. . .

*The anticipated or negotiated hours, when multiplied by the fixed hourly rate plus any material costs multiplied by the material handling rate, constitute the firm fixed price for the over and above work.*

(R4, tab 6 at 12-14) (emphasis added)

5

12.  CLIN X007AA, OVER AND ABOVE-LABOR RATE.

> OVER AND ABOVE - FIXED HOURLY RATE FIRM
> FIXED PRICE AS DIRECTED BY THE ACO/PCO.  ***ALL
> RATES APPLY TO PRIME CONTRACTOR AND ALL
> SUBCONTRACTORS***

> . . .

> This SubCLIN uses the fixed hourly rates in Attachment 2,
> Pricing Matrix.  These rates shall be used in negotiating a price
> when direct labor is involved for Over and Above
> requirements.  Overtime hours will be used only at the direction
> of the ACO/PCO.

(*Id.* at 14-15)

13.  CLIN X007AC, OVER AND ABOVE-PARTS AND MATERIALS AND MATERIAL HANDLING.

> FIRM FIXED PRICE AS DIRECTED BY THE ACO/PCO.
> The work called for under this item shall be accomplished
> when and as directed by the PCO/ACO in accordance with
> DFARS 252.217-7028 and the Over and Above Work
> Procedures stated in CLIN X007.  The work under this sub-
> CLIN includes parts and materials for repairs beyond fair
> wear and tear (BFWT) including replacement of GFE support
> equipment and those parts using the material handling rate in
> Attachment 2, Pricing Matrix.  The material handling rate
> shall represent the administrative costs of obtaining parts and
> materials for Over and Above requirements not included in
> the flying hour rate.  The Material Handling Rate shall
> include all indirect costs plus fee associated with obtaining
> materials for the prime and all subcontractors.  The Material
> Handling Rate shall be added to the negotiated material price
> to determine a fixed price amount for the materials.  All costs
> included within the fixed hourly rates, or fixed price CLINs
> elsewhere in this contract must be excluded from calculations
> used by the Contractor to arrive at its Material Handling Rate.

> . . .

6

> *DEFINITION OF MATERIALS: "Materials" are those parts or materials purchased, supplied, manufactured, or fabricated by the Contractor for the sole purpose of incorporating them into or making them a part of the end products or components thereof covered by this contract.*

(*Id.* at 16) (emphasis added)

14. On December 15, 2017, ATSA submitted Work Request No. 17-015 seeking contracting officer (CO) approval for work valued at an estimated $4,409.68. ATSA sought a Mobile Repair Team from P & W to come to Tyndall Air Force Base to evaluate the severity of magnesium corrosion in the intake air inlet case in one of its engines. The evaluation was required to determine the depth of repair necessary to allow the engine to remain in service. (R4, tab 9 at 1, 3) The use of P & W for this work was founded on the subcontract agreement between ATSA and P&W entered into shortly after the 0009 contract award, effective September 1, 2017 (R4, tab 53 at 5). ATSA recommended that the work be charged under CLIN X007AC, O & A Parts, Materials, and Material Handling. (R4, tab 9 at 3)

15. On December 20, 2017, the Defense Contract Management Agency (DCMA) requested that ATSA break down its costs in greater detail, explaining that the government would only pay for O & A labor at $55.12 an hour (R4, tab 9 at 24-25). ATSA resubmitted its revised Work Request No. 17-015 on February 15, 2018 (R4, tab 9 at 8-9). Of the total $4,409.68 proposed, ATSA anticipated that labor would cost $2,938.50 (*id.* at 8). On May 14, 2018, the CO approved the work request (R4, tab 9 at 17). On May 15, 2018, ATSA submitted an invoice seeking $2,938.50 in labor costs (R4, tab 9 at 29). DCMA agreed to pay no more than $1,543.36 because ATSA had not used the $55.12 O & A labor rate in attachment 2 of the contract. Negotiations between the parties reached an impasse on May 21, 2018. (R4, tab 9 at 27)

16. On May 30, 2018, ATSA filed a claim with the CO for the $1,395.14 difference between the $2,938.5 requested and the $1,543.36 received (R4, tab 22 at 1). The stated basis for the claim was described as:

> The amount claims (*sic*) and items at issue arise out of CLINS X007XX- Over and Above. CLIN X007AA is "Over & Above- Labor Rate" which specifically states that it applies to the prime contractor and all subcontractors. CLIN X007AC applies to "Over & Above - Material and Material Handling".

. . .

7

It is ATSA's position that any labor hour charge (whether shown as a separate charge or incorporated into the bill as a flat charge) is part of the "material cost" for which ATSA is entitled to full reimbursement for under CLIN 007AC. It seems that the government's position is that this vendor labor rate is capped at the $55.12 hourly rate.

. . .

ATSA was the prior contractor on the previous contract (FA8 1 06-11-C- 0004) and performed the same repair and maintenance for six (6) years. The standard process for those years was that any outside vendor costs (including labor) under the Over and Above CLIN was reimbursed at the full rate by the government with the appropriate negotiated burdens. In this contract [the] government is trying to hold ATSA to the $55.12 hour rate for any labor charged by those outside vendors regardless of . . . how much the vendor charges for its labor.

. . .

A subcontractor is a company with which there is a contractual relationship to perform work under the contract that is negotiated in advance, that sets rates, terms and conditions. If a prime can't negotiate a contract then it is free to go to another subcontractor that is offering the same services and attempt to enter into a subcontract with them. A vendor is a supplier of parts/labor that is based on an "as needed" relationship and that does not rise to the level of a subcontractor as a vendor is free to offer its services to any company that requires same. This was the definition that applied to the prior contract that ATSA performed on for six years. There was nothing in the solicitation (that resulted in this contract) that indicated that the government was taking a different position from the prior contract.

(*Id.* at 1-3) On June 18, 2018, the CO denied ATSA's claim (R4, tab 27 at 1). ATSA appealed the decision to the Board on July 2, 2018, which was docketed as ASBCA No. 61682.

8

DECISION

This appeal turns upon our interpretation of three of the contract's O & A provisions - CLIN X007-OVER AND ABOVE WORK PROCEDURES, CLIN X007AA, OVER AND ABOVE-LABOR RATE, and CLIN X007AC, OVER AND ABOVE-PARTS AND MATERIALS AND MATERIAL HANDLING. (Findings 11-13) The government argues that the plain language of the contract, CLIN X007, unambiguously establishes that appellant must propose labor charges at any subcontractor tier for O & A work under the contract's fixed hourly labor rates and the contract defines the term "vendor" in the definition of subcontractor. (Gov't br. at 6) In contrast, appellant's position is that "[t]his disagreement sets up a classic case of a latent ambiguity in which there is a reasonable interpretation by both parties as to the meaning of a term." (App. br. at 3) Appellant summarized the parties' disagreement as:

> Here, the Government believes by inserting the word "subcontractor" under CLIN X007AA it gave the contractor sufficient notice that the labor rate would apply to all vendors as well. ATSA, based on its reading and prior conduct and performance between the parties and industry standards, had no inkling that the term "subcontractor" would encompass their vendors.

(*Id.* at 4)

Our threshold issue is whether the plain language of the contract "supports only one reading or supports more than one reading and is ambiguous." *James G. Davis Construction Corporation*, ASBCA Nos. 58000, 58002, 15-1 BCA ¶ 35,818 at 175,154 (citing *NVT Technologies, Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004)). The mere fact that the parties differ in their respective interpretations of the contract language is not enough, both interpretations must fall within a "'zone of reasonableness.'" *Metric-Constructors, Inc. v. NASA*, 169 F.3d 747, 751 (Fed. Cir. 1999) (citations omitted). Such a determination begins with the plain language of the contract to discern the objective intent of the parties. *James G. Davis* 15-1 BCA ¶ 35,818 at 175,154 (citations omitted).

We agree with the government's position that the plain language of the contract, as applied to this dispute, is unambiguous. It is our understanding that the dispute before us only involves charges for an outside contractor to evaluate the severity of magnesium corrosion in the intake air inlet case in one of its engines to determine the depth of repairs necessary to allow the engine to remain in service, i.e. only services not parts. (Finding 14) Consequently, a reading of the plain

9

language of the contract does not support appellant's argument that the services provided by P & W in this dispute would be reimbursed under the O & A material clauses, CLIN X007(b) and CLIN X007AC, because the services at issue do not meet the definition of "material costs" in those clauses. (See findings 11, 13) The reimbursement would only involve the fixed–price O &A Labor Rate CLIN X007AA. (Finding 12) Even assuming this were a situation where materials/parts were involved and replaced, a plain reading of the two clauses is clear that the only reimbursable costs are, "[t]he anticipated or negotiated hours, when multiplied by the fixed hourly rate plus any material costs multiplied by the material handling rate . . . ." (finding 11).

*May We Consider Extrinsic Evidence of Trade Practice and Industry Standards?*

When the language of a contract is unambiguous, it must be given its "plain and ordinary" meaning and the Board may not look to extrinsic evidence to interpret its provisions. *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996) (citation omitted). However, even when a contract is unambiguous, we have found it appropriate to turn to one form of extrinsic evidence—evidence of trade practice and custom. *DynCorp International LLC*, ASBCA No. 59244, 17-1 BCA ¶ 36,653 at 178,494 (citing *TEG-Paradigm Environmental, Inc. v. United States,* 465 F.3d 1329, 1338 (Fed. Cir. 2006)). Such extrinsic evidence may be considered to confirm that the parties intended the term to have its plain and ordinary meaning. (*Id.*)

*Extrinsic Evidence*

Appellant argues that under prior practice on the 0004 contract "vendors" is an industry term related to the O & A requirements and that ATSA's position is that "vendors" in these situations are not a "subcontractor" subject to a subcontract agreement holding them to the negotiated rates in the 0009 contract O & A CLINs XX007 and X007AA. (App. br. at 3) Our findings establish that the contract language of both the 0004 and 0009 contracts do not include the word "vendor". However, both parties use these terms within the follow-on solicitation and ATSA's proposal in response. This indicates this term is recognized and used within this industry as appellant asserts. (Findings 7-9)

That being said, logically reimbursement under the contract CLINs at issue only apply to work for which the contractor, ATSA, has either performed in house, or more likely as in this appeal, contracted for with an outside contractor, a "vendor". The evidence also establishes that when ATSA actually contracts with the vendor, ATSA considers the vendor to become a "subcontractor" (finding 10). Although ATSA's proposal on the current contract clearly recognizes a distinction between the two terms, the proposal states, "[E]ach of the key vendors identified

10

will be subcontracted to support the identified tasks as required." (Finding 9)  This reality is further reinforced by the facts of the specific dispute before us.  ATSA entered into a subcontract agreement with P&W shortly after award of the 0009 contract.  So, under the specific facts of this dispute, the work was given to a contractor that was never a "vendor" under appellant's definition but instead was in fact a subcontractor (finding 10).  Consequently, the extrinsic evidence of trade practice confirms our unambiguous interpretation of the contract language.[*]

In summary, after consideration of all the evidence, we hold that appellant is bound by the fixed labor rate it bid for CLIN X007AA and the materials and materials handling CLIN X007AC is inapplicable.  The extrinsic evidence confirms this interpretation.  We have considered trade practice evidence but we conclude that trade practice does not support appellant's position.

---

[*] ATSA's primary argument is that the contract language is ambiguous and a consideration of the extrinsic evidence supports ATSA's reading of the contract language that trade practice in this business recognizes a distinction between the terms "subcontractor" and vendor".  This, ATSA argues, creates a latent ambiguity triggering the application of the principle of *contra proferentum,* construing the contract language against the drafter, in this case the government (app. br. at 9).  Since our examination of the extrinsic evidence of trade practice supports a finding that the contract language is unambiguous, we need not address ATSA's *contra proferentum* argument.

11

<u>CONCLUSION</u>

For the forgoing reasons, this appeal is denied.

Dated:  March 30, 2020

JOHN J. THRASHER
Administrative Judge
Chairman
Armed Services Board
of Contract Appeals

I <u>concur</u>

I <u>concur</u>

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

12

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61682, Appeal of Aero Tech Services Associates, Inc., rendered in conformance with the Board's Charter.

Dated:  March 30, 2020

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals