Williams, Judge,
delivered the opinion of the court:
At an auction sale held by the Navy Department at the Navy supply depot at Brooklyn, N.Y., on October 15, 1924, the plaintiff was the highest bidder on 443,782 pairs, more or less, of white Navy trousers, for which it had submitted a bid of eighty-three cents per pair. Plaintiff’s bid was accepted by the Navy Department and it thereafter received as a result of said bid and sale 360,494 pairs of trousers, for which it paid the Government the sum of $299,210.02. Subsequently, on March 27, 1925, plaintiff purchased from the Navy Department 2,800 additional pairs of trousers at ninety-three cents per pair, making its total purchases 363,294 pairs at a total cost of $301,814.02.
On May 1, 1928, a bill for the relief of the plaintiff company (S. 1689) was introduced in the Senate of the United States, authorizing an appropriation of $196,154.21 to be paid to the plaintiff company for loss sustained by it growing out of the purchase of the trousers.
On January 28, 1929, by Senate Resolution 315, Senate bill 1689 was referred to this court under the provisions of section 151 of the Judicial Code (title 28 U.S.C. sec. 257), which provides:
“ Whenever any bill, * * * is pending in either House of Congress providing for the payment of a claim against the United States, legal or equitable, * * * to any person, the House in which such bill is pending may, for the investigation and determination of facts, refer the same to the Court of Claims, which shall proceed with the same in accordance with such rules as it may adopt and report to *811 such House the facts * * *: Provided, however, That if it shall appear to the satisfaction of the court upon the facts established, that under existing laws or the provisions of this chapter, the subject matter of the bill is such that it has jurisdiction to render judgment or decree thereon, it shall proceed to do so, * * * and shall report its proceedings therein to the House of Congress by which the same was referred to said court.”
The claim being founded upon a contract with the Government of the United States, comes within the general jurisdiction of the court as defined in section 145 of the Judicial Code (title 28 U.S.C. sec. 250), and is one upon which the court has jurisdiction to render judgment.
The claim as presented to Congress, and as set forth in the petition was for $196,154.21. Three items constitute the amount claimed, (1) direct loss on the sale of the trousers, that is the difference between the purchase price and the amount received by plaintiff upon the sale and disposition ■of the trousers, and (2) the overhead or operating expenses of the plaintiff in conducting its business attributable to the transactions involved, and (3) the loss of anticipated profits. During the taking of the testimony the plaintiff withdrew the item of the claim for anticipated profits and now bases its right to recover on the first two items stated.
Plaintiff’s direct loss growing out of the sale of the trousers is established beyond question and is $68,073.47. The proof as to the indirect loss growing out of the overhead expenses of the plaintiff in the conduct and operation of its business directly attributable to the purchase and sale of the trousers is not altgether satisfactory. However, it is based on the uncontradicted testimony of the plaintiff’s auditor as to such costs as they are reflected by the plaintiff’s books. While the United States would in no event be liable to reimburse plaintiff for this cost and expense, even if plaintiff were otherwise entitled to recover, we have deemed it proper to make a finding as to this expense in view of the fact it was included in the claim submitted to Congress by the plaintiff. We have therefore found (finding XI) that the overhead expenses of plaintiff during the period that applied to the transactions on white trousers purchased from the Navy, in- *812 eluding all charges, salaries, commissions, traveling expenses, advertising, freight, shipping, storage, alterations, insurance, rent, light and electricity, printing, telephone and telegraph, general expenses, legal accounting, interest, and bad debts, were $77,588.70.
The contract in this case is one of offer and acceptance, the advertisement, bid and acceptance constituting the contract between the parties. It is elementary that one who makes an offer to enter into a contract may do so on any terms that he may see fit to make, as long as they are not illegal, and that if the offer is accepted its terms are binding on both parties. The Government, by printed catalogue No. 565-A, advertised a sale of clothing by public auction at the Navy supply depot, Brooklyn, New York, on Wednesday, October 15, 1924, at 10 a.m., eastern standard time. The conditions and terms of sale were set out in detail in the catalogue, the pertinent provisions of which are stated in finding IV. The terms and conditions of sale as set forth in the catalogue constitute a material part of the offer of sale, and the plaintiff in submitting its bid necessarily accepted these terms and conditions and predicated its bid upon them. They are binding upon it.
Paragraph 8 of the conditions and terms of sale reads:
“ 3. All material listed in this catalogue will be offered for sale by auction ‘ as is and if is ’ without recourse. The description is based on the best available information, but no warranty or guaranty is given by the Navy as to the exact quantity, quality, condition, weight, size, or description, or that the same is in condition to be used for the purpose for which it was originally intended, or may be intended or desired to be used by the purchaser. No claim for allowance upon any of the grounds aforesaid will be considered after the property is knocked down to a bidder by the auctioneer. In every case where samples of the lots are shown, these samples to the best of the Navy’s belief are true and fair, but bidders are cautioned that they must make examination of lots before the sale and no allowance will be made on account of any difference between the sample and lot.”
Paragraph 4 reads:
“ 4. Full opportunity for actual physical inspection of the material listed is offered to prospective bidders for one week *813 prior to date of sale (Sunday excepted). Failure on the part of any purchaser to inspect the material will not constitute grounds for any claim for adjustment or rescission of contract.”
This court since the close of the World War has considered many claims growing out of the sale of surplus property by the Army and Navy Departments. We have uniformly held that in the case of sale, such as was made here, where the advertised terms of the sale are that the property is sold. “ as is ” and “ where is ”, and where no warranty or guaranty is given as to the exact quantity, quality, condition, weight, size, or description, or that the same is in condition to be used for the purpose for which it was originally intended, or may be intended or desired to be used by the purchaser, recovery cannot be had against the Government on any grounds other than shortage in delivery of the property sold. Triad Corp. v. United States, 63 C.Cls. 151; S. Brody v. United States, 64 C.Cls. 538; Silberstein & Son v. United States, 69 C.Cls. 412.
The trousers offered for sale were available for inspection for one week at the Navy supply depot in Brooklyn where they were sold. Officers of the plaintiff visited the supply depot and made an inspection of the trousers. The trousers were nearly all in wooden cases, each case containing eight bales with 50 trousers to the bale. They were stored on different floors of the supply depot, and at the time of plain-' tiff’s inspection of them five or six men in the depot were engaged in the work of opening bales and sorting trousers. They were handling back and forth forty thousand or fifty thousand pairs of trousers. These were examined by plaintiff’s representatives. Before the day of the sale one of plaintiff’s officers made a second visit to the supply depot to inspect the trousers offered for sale. The plaintiff’s officers did not on either occasion inspect all the trousers contained in the lot advertised, and it was manifestly impossible for them to do so because of the large quantity in the lot, and the fact that hundreds of cases in which they were stored were not opened. On the day of sale several hundred pairs of the trousers were on display in the room where the auction was held, some of which were stained. Officers conducting *814 the sale announced that 100,000 pairs, more or less, of lot 5, the lot upon which the plaintiff bid, had been withdrawn from sale and that the trousers on display were a fair representation of the quantity offered. The plaintiff submitted a bid for and was awarded the entire lot offered. When the trousers were received they did not come up to the plaintiff’s expectations. Some of them were composed of white and yellow materials, having been made of both bleached and unbleached material. Others were badly stained from oil and other causes. Some were stained with ink. Some were damaged in shipment, and 10,865 pairs were found to be worthless and were scrapped.
The plaintiff contends, and the findings show, that the trousers inspected by the plaintiff before the sale, and those on display on the day of the auction sale, were not damaged except by stains due to baling. It is contended, therefore, that statements made by defendant’s officers to plaintiff’s representatives at the time of their inspection of the trousers prior to the sale, and the statements of the officers conducting the sale that the trousers on display at that time were fair representations of the lot advertised, were misleading and amounted to actual misrepresentation on the part of the defendant as to the kind and quality of the trousers upon which its bid was submitted. This contention, if true, and we have found (finding XII) that there is no evidence in the record of wilfull misrepresentation or bad faith on the part of the defendant, cannot avail the plaintiff in view of the clear-cut provisions of paragraph 16 of the terms and conditions of sale upon which plaintiff’s bid was submitted, that:
“No representative of the Navy is authorized to make any statement or representation as to quality, character, condition, size, weight, or kind of any material offered at this sale, and any representation or statement made by any representative of the Navy concerning any such material will not be binding on the Navy nor considered as grounds for any claim for adjustment or rescission of any sale. This is not a sale by sample."
The plaintiff cannot be heard to say that it was misled as to the character and quality of the trousers purchased because of misleading statements of the defendant’s agents *815 and officers in face of the fact that its bid was submitted on the understanding and upon the express condition that “ no representative of the Navy is authorized to make any statement or representation ” as to the quality or character of the goods offered for sale and that “ any representation or statement made by any representative of the Navy * * * will not be binding on the Navy.” If the plaintiff, despite this unmistakable and positive provision in the terms and conditions of the sale, saw fit to submit a bid for the entire lot of trousers offered for sale, without having examined and inspected the whole of them, relying upon the unauthorized statements of agents of the defendant engaged in sorting and packing the trousers as to the quality of portions of the lot not inspected, it did so at its own risk. If it elected to rely on the unauthorized statements of persons conducting the auction that samples on display at the place of sale were fairly representative of the lot of trousers advertised and offered for sale it also did that at its own risk. It was expressly visited with notice that “ this is not a sale by sample.”
The plaintiff complains because the Department, between the date of the advertisement of the sale and the day of the sale, withdrew 100,000 pairs of the trousers offered. This action was authorized by paragraph 14 of the terms and conditions of sale:
“The right is reserved to reject any or all bids, and to award less than the quantity desired by the bidder, to waive defects in bids, and to withdraw whole lots or any portion thereof, as may be deemed advantageous to the Navy.”
The United States cannot be charged with bad faith, or a breach of the contract, because it exercised a right which it had specifically reserved to itself in offering the trousers for sale.
It is not claimed that there was a shortage in delivery of the number of pairs of trousers purchased by the plaintiff. The trousers were all delivered from the specific lot no. 5 advertised and offered for sale in defendant’s catalogue no. 565-A. Yankee Export & Trading Co. v. United States, 72 C.Cls. 258. They were offered for sale “ as is and if is ” without recourse, without warranty or guaranty on the part *816 of the Navy Department as to the exact quantity, quality, condition, weight, size, or description, or that they were in condition to be used for the purpose for which they were originally intended or might be intended or desired to be used by the purchaser. The plaintiff’s bid was made and accepted on these terms and conditions. The Government in no way breached the terms and conditions of the sale as set forth in its catalogue. The plaintiff under these facts and circumstances has no legal claim against the Government for any loss it may have sustained by reason of the purchase and sale of the trousers.
That the plaintiff sustained a loss, and a grievous one, growing out of the transaction is clearly disclosed by the findings. Whether, under the facts and circumstances shown, a moral obligation rests on the United States to reimburse the plaintiff, in whole or in part, for its loss is a matter that lies wholly within the jurisdiction of Congress, and is one upon which the court is not called upon to express an opinion.
The petition is dismissed, and the proceedings herein will be reported to the Senate, pursuant to section 151 of the Judicial Code. It is so ordered.
Whaley, Judge; LittletoN, Judge; GeeeN, Judge; and Booth, GMef Justice, concur.