AIRPLANE SALES INTERNATIONAL CORPORATION, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 99–88C.

United States Court of Federal Claims.

Nov. 14, 2002.

---

Michael J. Coyne, Springfield, MA, for plaintiff.

James H. Holl, III, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant, with whom were Stuart E. Schiffer, Acting Assistant Attorney General, David M. Cohen, Director, and Harold D. Lester, Jr., Assistant Director.

## OPINION

WILSON, Judge.

This breach of contract dispute is before the Court on cross-motions for summary judgment pursuant to Rule 56 of the U.S. Court of Federal Claims (RCFC). As a result of the existence of genuine issues of material fact, the cross-motions are DE-NIED.

## BACKGROUND

This dispute arises from a three-party transaction between plaintiff Airplane Sales International Corporation ("Airplane Sales"), the National Museum of Naval Aviation ("Naval Museum" or "Government"), the United States Navy's official aviation museum, and the Naval Aviation Museum Foundation, Inc. ("Museum Foundation"), a private, non-profit corporation founded to support the Naval Museum's development. Plaintiff alleges that it is an intended third-party beneficiary to a contract between the Naval Museum and the Museum Foundation involving the transfer of surplus aircraft. Plaintiff asserts that the government's failure to transfer certain aircraft parts to Airplane Sales breached its obligations under the contract.

Pursuant to 10 U.S.C. § 2572 (1994), the Secretary of the Navy may transfer excess or obsolete aircraft and parts to such non-profit, educational institutions as the Naval Museum. The Naval Museum may then exchange these excess aircraft and parts with private parties such as the Museum Foundation in return for historical items or services. As part of such a transaction, on April 17, 1995, Airplane Sales entered into a contract with the Museum Foundation to purchase eleven C–130 aircraft hulks for a total price of $200,000. The contract provided that the Museum Foundation "does not warrant the fitness of the equipment ... for any purpose and the equipment is offered only as is/where is with no guarantee stated or implied." (Def.'s App. at 22.) The contract was expressly conditioned upon the Foundation's procurement of the C–130 hulks from the Naval Museum.

On or about November 27, 1995, defendant entered into a contract with the Museum Foundation for the transfer of the eleven hulks, which were located at Davis–Monthan Air Force Base (AFB) in Tucson, Arizona. The aircraft were designated Contract Line Item Numbers (CLINs) 0001 through 0011. Section C001 of the contract states that

CLINs 0001 through 0011—are non-flyable hulks having been subjected to extensive parts reclamation at the Aircraft Maintenance and Regeneration Center (AMARC),

Davis–Monthan Air Force Base and have been classified as scrap. They have been or will be stripped of their electronic, communications, and navigation equipment, all four engines, all landing gear assemblies, various panels, fixtures, doors, and other ancillary parts and components.... These are located in open storage at AMARC and are supplied in "as-is" condition following appropriate demilitarization.

(Def.'s App. at 4.) In addition, the contract between the Foundation and the Museum includes two other disclaimers of warranty. Section H005 states that "[t]he Government does not warrant the fitness of equipment transferred to the Contractor (CLINs 0001 through 0011) for any purpose and the equipment is offered only as is/where is with no guarantee stated or implied." (Def.'s App. at 14.) Finally, Sections F004 and F005 provide that CLINs 0001 through 0011 "shall be picked up, 'AS IS/WHERE IS WITH NO GUARANTEES OFFERED OR IMPLIED[.]' " (Def.'s App. at 20; emphasis in original.)

On November 30, 1995, the Naval Museum's director sent a letter to the Naval Inventory Control Point Detachment Field Service Office at Davis–Monthan AFB releasing the eleven aircraft hulks to the Museum Foundation. (Pl.'s App. at 176.) Paragraph three of the release letter stated that the transfer should include

[l]oose aircraft parts and components in and around the aircraft hulks and identified as belonging to these specific aircraft hulks as set forth in their respective log books.... not includ[ing] any parts or components belonging to other aircraft nor does it include parts identified for reclamation, demilitarization, or other U.S. Government requirements.

(Pl.'s App. at 176.) Ownership of the hulks was transferred from the Foundation to plaintiff, on December 6, 1995.

Plaintiff contends that the term "hulk," as used in the contracts at issue here, describes not only the shell of the aircraft, but also those loose parts and components shown by the logbook to still be associated with the aircraft (the "logbook parts"). Plaintiff had the opportunity to inspect both the hulks and

their associated logbooks at Davis–Monthan Air Force Base before entering into its contract with the Museum Foundation for the purchase of the hulks. The logbooks documented the maintenance history of certain parts, such as engines and propellers, and plaintiff alleges, described which, if any, of the parts had been stripped from the hulks. Plaintiff contends that the defendant breached the Museum Foundation–Naval Museum contract by failing to transfer all the parts purportedly due to Airplane Sales as a third-party beneficiary.

With the Navy's permission, plaintiff received its hulks' logbooks and began to remove parts on December 11, 1995. However, plaintiff claims that despite the repeated assurances of a Davis–Monthan employee, defendant never produced other logbook parts to which it believed it was entitled. Furthermore, plaintiff contends that on December 12, 1995 it noticed that a large collection of parts associated with the hulks had disappeared. According to plaintiff, the government represented that these parts had been moved to clean Davis–Monthan for a General's visit. (Pl.'s App. at 22.) Few of these parts were recovered. Finally, on or about April 8, 1996, plaintiff claims it visited Davis–Monthan for a Defense Reutilization and Marketing Service (DRMS) sale, and found defendant attempting to sell several components owned by Airplane Sales. (Pl.'s App. at 27–28.) These parts were withdrawn from the sale and were recovered by plaintiff.

On March 18, 1996, the Naval Criminal Investigative Service seized the hulks purchased by Airplane Sales, which continued to be located at Davis–Monthan AFB, as part of a criminal investigation into the transaction to transfer the hulks to plaintiff. Plaintiff sought an order forcing defendant to return the property in the U.S. District Court for the District of Arizona. Although criminal investigations remained ongoing, defendant ultimately withdrew its opposition to plaintiff's demand. On April 1, 1997, the District of Arizona ordered the government to release the hulks purchased by Airplane Sales, pursuant to the terms of the Museum Foundation–Naval Museum contract.

Plaintiff filed a final Notice of Claim with the Contracting Officer on November 3, 1998. The Contracting Officer failed to render a decision on plaintiff's claim within the sixty days allowed by the Contract Disputes Act (CDA), 41 U.S.C. § 601, *et seq* (1994). Thus, this Court has subject matter jurisdiction to adjudicate plaintiff's claims.

## ANALYSIS

Summary judgment is appropriate where there are no genuine issues of material fact in dispute and the moving party is entitled to summary judgment as a matter of law. *See* RCFC 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Material facts are those which might affect the outcome of the litigation. *Id.* at 248, 106 S.Ct. 2505. The moving party bears the burden of demonstrating the absence of genuine issues of material facts. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Since contract interpretation is a question of law, it is generally amenable to resolution on summary judgment motions. *Varilease Tech. Group, Inc. v. United States,* 289 F.3d 795, 798 (Fed.Cir.2002); *Cross Petro. v. United States,* 51 Fed.Cl. 549, 554 (2002). However, when a contract is ambiguous, and extrinsic evidence is required to evaluate the contracting parties' intent, summary judgment is inappropriate. *Beta Systems Inc. v. United States,* 838 F.2d 1179, 1183 (Fed.Cir.1988).

When adjudicating a contract dispute, the Court first looks to the plain language of the contract. *Textron Def. Sys. v. Widnall,* 143 F.3d 1465, 1468 (Fed.Cir.1998); *Northrop Grumman Corp. v. Goldin,* 136 F.3d 1479 (Fed.Cir.1998). The plain meaning is the understanding that a reasonably intelligent person acquainted with the contemporaneous circumstances would derive from the contract. *Hol–Gar Mfg. Corp. v. United States,* 169 Ct.Cl. 384, 351 F.2d 972, 975 (1965). A contract is ambiguous when it is subject to more than one reasonable interpretation, each of which would be consistent with the contract as a whole. *See Metric Constructors, Inc. v. Nat'l Aeronautics and Space Admin.,* 169 F.3d 747, 751, "If contractual provisions are clear and unambiguous, they must be given their plain and ordinary meaning, and court may not resort to extrinsic evidence to interpret them." *McAbee Const. Inc. v. United States,* 97 F.3d 1431 (Fed.Cir. 1996) (citations omitted); *accord Barseback Kraft AB, Empresa Nacional Del Uranio, S.A. v. United States,* 121 F.3d 1475 (Fed. Cir.1997). When interpreting a contract, a court must give reasonable meaning to all of a contract's terms and not render portions of it meaningless. *McAbee Const. Inc.,* 97 F.3d at 1435; *U.S. v. Johnson Controls, Inc.,* 713 F.2d 1541, 1555 (Fed.Cir.1983).

██ As a threshold matter, the Court must determine whether plaintiff was an intended third-party beneficiary of the Museum Foundation–Naval Museum contract. The test for third-party beneficiary status is whether or not the contract reflected an intent to benefit a third party. *State of Montana v. United States,* 124 F.3d 1269, 1273 (Fed.Cir.1997). "The intended beneficiary need not be specifically or individually identified in the contract, but must fall within a class clearly intended to be benefitted thereby." *Id.* In other words, if circumstances indicate that the promisee intends to give a third-party the benefit of the promised performance, they are an intended third-party beneficiary. *See* Restatement (Second) of Contracts § 304(1)(b) (1981). Here, the record indicates that both the Museum Foundation and Naval Museum were aware of the Museum Foundation's commitment to sell the C–130 hulks to Airplane Sales, expressly conditioned upon the execution of the Museum Foundation–Naval Museum contract. Thus, Airplane Sales was an intended third-party beneficiary of the Museum Foundation–Naval Museum contract. Plaintiff therefore may seek damages for defendant's alleged breach of contract for failing to transfer the hulks' logbook parts.

██ Defendant argues that plaintiff was not entitled to missing parts or further parts allegedly associated with the hulks. Instead, the government argues that the language of the Museum Foundation–Naval Museum contract was clear and unambiguous, and granted plaintiff ownership of the hulks without guarantees, "as/is, where/is," preserving defendant's rights to strip the hulks of parts as

it saw fit, regardless of when the stripping took place. Plaintiff contends that the contract is ambiguous as it pertains to the description of the aircraft hulks and parts to be transferred to Airplane Sales, and argues that the Court should look to extrinsic evidence of the parties' intent to interpret the contract. In particular, plaintiff suggests the contract language in section C001 is internally contradictory and ambiguous, because transfer of the hulks in " 'as-is' condition following appropriate demilitarization" is inconsistent with the terms dictating that the hulks "have been or *will be* stripped" of parts. (Pl.'s Resp. at 15; emphasis added.)

Disclaimers of warranty featuring the "as is/where is" language are common in government surplus sales, and have been interpreted strictly. *Rochester Iron & Metal Co. v. United States*, 168 Ct.Cl. 422, 339 F.2d 640, 643 (1964) ("The very nature of an 'as is' and 'where is' contract serves notice upon a prospective purchaser that the risk of loss is on the purchaser."); *Aircraft Assoc. and Mfg. Co., Inc. v. United States*, 174 Ct.Cl. 886, 357 F.2d 373, 376 (1966) ("the law is settled that the [as-is/where-is language] must be given effect.... [this] standard provision of Government disposal contracts is neither unduly broad nor oppressive."). Buyers of surplus goods assume these risks, according to the Second Circuit, "know[ing] that there is always a chance of buying property of little value or that may develop into a great bargain with a huge windfall of profit." *Dadourian Export Corp. v. United States*, 291 F.2d 178, 182 (2d Cir.1961). Although disclaimers of warranty such as those in effect in this case "may appear to place a harsh risk of loss upon the buyer ... [they] uniformly[ ] have been upheld by federal courts." *Commodities Recovery Corp. v. United States*, 34 Fed.Cl. 282, 292 (1995) (citing *Sachs Mercantile Co. v. United States*, 78 Ct.Cl. 801, 1934 WL 2080 (1934).)

■ In this case, however, the plaintiff's claim that parts associated with the bargained-for hulks were removed after the contract's execution raises a genuine issue of material fact. The Court agrees with plaintiff that the contract's "will be" clause is ambiguous, and cannot be reasonably interpreted to allow the government to strip parts from the hulks after they were demilitarized and the Museum Foundation–Naval Museum contract went into effect. Otherwise, the "as is/where is" language repeatedly used in the contract is rendered meaningless, and defendant could continue to strip parts from Airplane Sales' aircraft indefinitely after the contract's execution, as long as the barest hulk remained.

Significantly, defendant neither disputes nor concedes that parts were removed after the transfer of ownership to plaintiff. Instead, it merely relies on legal immunity from responsibility derived from the contract's as-is/where-is clauses. Although the cases cited *supra* strictly enforced similar disclaimers of warranty, albeit without a "will be" clause, they do not support the proposition that the government bears no responsibility for further stripping, loss, or sale of associated parts following the transfer of ownership. To the contrary, in *Aircraft Associates*, the case most factually similar to this one, the Court of Claims allowed recovery for plaintiff on a claim implicating the government's removal of parts from surplus aircraft after the bid was issued but before title passed to plaintiff. 357 F.2d at 380. As a result of the ambiguity in the contract's disclaimers of warranty, extrinsic evidence is necessary and appropriate to determine the extent to which the defendant was allowed to remove parts, and summary judgment is inappropriate. *See Beta Systems Inc.* 838 F.2d. at 1183.

Finally, plaintiff's allegations that aircraft parts to which it was entitled were lost or sold raises a further issue of material fact. It is necessary to establish a baseline understanding of what condition constituted "as-is/where-is" following appropriate demilitarization for the Court to make a determination of what parts plaintiff were entitled to and what was allegedly lost or sold. In other words, it is necessary to determine what "as-is/where-is" *was* at the time of transfer, in order to assess defendant's potential liability for any allegedly withheld parts after transfer. Thus, for the above-stated reasons, summary judgment is inappropriate.

## CONCLUSION

The parties' cross-motions for summary judgment are DENIED. The parties shall file a joint status report proposing a schedule for further proceedings on or before December 16, 2002.

**IT IS SO ORDERED.**