ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of -- | ) | |
| | ) | |
| General Dynamics - National Steel | ) | ASBCA No. 61854 |
| and Shipbuilding Company | ) | |
| | ) | |
| Under Contract No. N00024-17-C-4426 | ) | |

APPEARANCE FOR THE APPELLANT:     William M. Pannier, Esq.
                                    Pannier Law, PC
                                    Thousand Oaks, CA

APPEARANCES FOR THE GOVERNMENT:     Craig D. Jensen, Esq.
                                     Navy Chief Trial Attorney
                                    Devin A. Wolak, Esq.
                                     Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE PAUL ON THE PARTIES'
CROSS-MOTIONS FOR SUMMARY JUDGMENT

This is an appeal of a deemed denial by the Navy's contracting officer (CO) of appellant General Dynamics National Steel and Shipbuilding Company's (GD) certified claim seeking equitable adjustments in a total amount of $1,933,018.30. The Contract Disputes Act (CDA), 41 U.S.C. §§ 7101-7109, is applicable. Appellant filed a motion for summary judgment, and the Navy submitted a cross-motion. The underlying record is voluminous. We grant the appellant's motion and deny respondent's cross-motion.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTIONS[1]

1. On January 24, 2017, the Naval Sea Systems Command, Department of the Navy (NAVSEA) issued Solicitation No. N00024-17-R-4426 (R4, tab 1.01 at 1.05). Contract Line Item (CLIN) No. 001 described the basic work as follows:

> The Contactor shall prepare for and accomplish repair and alterations during the Dry-Docking Phased Maintenance Availability (DPMA) onboard USS MAKIN ISLAND (LHD 08) as specified in the statement of work provided herein and in accordance with standard items, work item

---

[1] We cite these facts solely for purposes of resolving the cross-motions.

specification package SSP TPPC-LHD8-SWRMC17-CNO1 drawings, test procedures, and other detailed data as included in Attachments J-1 and J-2.

(R4, tab 1 at 2)

2. The solicitation incorporated by full text NAVSEA Clause 5252.233-9103, DOCUMENTION OF REQUESTS FOR EQUITABLE ADJUSTMENTS (APR 1999); it also incorporated by reference Defense Federal Acquisition Regulation Supplement (DFARS) 252.217-7003, CHANGES (DEC 1991), and DFARS 252.243-7002, REQUEST FOR EQUITABLE ADJUSTMENT (DEC 2012) (R4, tab 1 at 52, 57-58).

3. The solicitation was amended 10 times (R4, tab 1.01, *passim*).

4. The Navy received two proposals in response to the solicitation; and, on June 6, 2017, it awarded Contract No. N0024-17-C-4426 to appellant in a fixed-price amount of $121,598,483 (R4, tabs 1.11-12).

5. The contract contained several CLINs which were further broken down into work items (R4, tabs 1-2, *passim*). A typical work item format consisted of five paragraphs: 1) scope, 2) references, 3) requirements, 4) notes, and 5) government furnished materials (GFM). Paragraph 5 typically provided: "All GFM listed in paragraph 5 shall be installed by the requirements invoked in paragraph 3." GFM is to be listed in accordance with the following categories:

5.1 LLTM[2]

5.2 Push MATERIAL

5.3 KITTED MATERIAL

(App. supp. R4, tab 1 at 32) The work items did not place any responsibility on the contractor with respect to fabrication of GFM. Accordingly, GD did not include any such amounts in its proposal (R4, tabs 1-2, *passim*; tab 1.12, *passim*).

6. Subparagraph 1.2 of the contract's scope of work provided:

The Contractor shall accomplish planning and scheduling to ensure a rational, integrated and timely plan for receipt, storage and installation of Government Furnished Material

---

[2] "LLTM" is long lead time material (R4, tab 4 at 4080).

as identified in work item specifications, and for accomplishment of production work.

Subparagraph 1.8 of the scope of work stated:

> Government Furnished Material (GFM) cited in the solicitation will be shipped to the contractor's facility. The successful offeror is to coordinate delivery of Government Furnished Material with the Project Manager. Government property permanently removed from a vessel that requires a Property Administrator's disposition instructions shall be property prepared for shipment and be delivered as directed by the Property Administrator. GFM will be listed in paragraph 5 of the Work Items(s).

(R4, tab 1 at 15-16)

7. The requirements of the Navy's Joint Fleet Maintenance Manual (JFMM) are applicable to the instant contract. Subparagraph 2.18.2.3 provided:

> Late or Defective Government Furnished Property and Information. When a contract obligates the Government to provide GFP and information to a contractor, the Government must provide it by the date specified, or if no date is specified, whenever the contractor reasonably requires it. Failure to do so may entitle the contractor to an equitable adjustment. The GFP or GFI must be suitable for its intended use or purpose when the contractor receives it, unless the contract provides otherwise, or the contractor may similarly be entitled to an equitable adjustment. Late or defective furnished Government property and information ranks second only to constructive change orders as the most frequent basis of claims.

(R4, tab 4 at 4047)

8. Also, subparagraph 4.4.7 stated:

> Material Requirements. The contractor shall furnish material required for the performance of any contract unless provided as GFM. Any other material required for performance is Contractor Furnished Material. In contracts it is Government policy, in accordance with

3

reference (h), for contractors to supply all labor and material required for performance of the terms and conditions of the contract. One exception is the Government has the right to provide material as GFM whenever it is determined to be in the best interest of the Government. Long Lead Time Material should be provided as GFM. This material is defined as that which is not commercially or otherwise available to the contractor in time to support the performance schedule. The following material should be considered GFM:

A. Parts unique to or obtainable only through the Government.

B. Standardization material (System Procured Material/Contractor Procured Material for Alterations) (for configuration consistency).

C. LLT Material (including any material not available in time to support production).

D. Parts requiring provisioning of technical documentation (new components not supported in the Navy supply system).

E. Stocked material: In long supply (supplies far in excess of demand), expiring shelf life (material in stock will expire if not used) or Class Maintenance Plan (CMP) programmed material (pre-positioned for special CMP programs).

F. Whenever it is in the best interest of the Government.

(R4, tab 4 at 4080-81) This subparagraph demonstrates that GFM is material with which the Government has a special, if not unique, relationship. As such, it reinforces the notion that the Government should also have a unique role in fabricating such material.

9. On July 5 and July 7, 2017, the Navy issued Requests for Contract Change (RCC's) 10G through 27G. The RCC's belatedly required GD to provide 17 work items, comprising over 11,000 line items of material, as CFM rather than GFM (app. supp. R4, tabs 3-20). Each RCC was comprised of a document marked "For Pricing Only" (*id.*).

10. On August 17, 2017, GD informed the Navy of its concerns regarding the issuance and implementation of RCC's 10G through 27G. Initially, GD stated its concern regarding the lateness of the arrival of GFM materials, noting that this material was to be delivered to the pile 30 days before the ship's availability. It then noted that the changes involved over 11,000 line items of material. GD also posited a schedule impact of 23 weeks and referenced accumulating costs. Again noting the late arrival of GFM, GD stated that – even as of mid-August 2017 – it had received only a small portion of the promised materials (R4, tab 3 at 3131-32).

11. The RCCs did not place any fabrication requirements on GD with respect to the GFM which now compromised CFM. Each RCC stated "For Pricing Only" (SOF ¶ 9). In addition, the RCCs described GD's responsibilities in terms of "Procure Material" (app. supp. R4, tabs 3-20). Thus, the Navy provided GD with funds for procurement but not for other activities, such as fabrication of systems (*id.*).

12. On August 31, 2017, GD submitted a "Request for Equitable Adjustment – Pricing and Requisitioning of GFM converted to CFM" to the CO. It stated that it had incurred an additional 2,336 man hours to procure and requisition the CFM at a cost of $117,620. (R4, tab 3 at 3133-34) On September 14, 2017, GD submitted revised price estimates needed "to identify and fund the required pre-fabrication labor necessary to fully convert GFM to CFM" (R4, tab 6 *passim*).

13. The CO took exception to GD's request. For the first time, the CO asserted:

> It is the contracting officer's determination that pre-fabrication requirements for the GFM that was revised to CFM were included in the base contract award.
>
> NASSCO (GD) is hereby directed to perform all pre-fabrication requirements associated with the above-listed RCC's.

(R4, tab 3 at 3136) There is no record evidence supporting this assertion. We have found that no such amounts are included in GD's proposal (SOF ¶ 5). Thus, the CO was unilaterally imposing new contractual requirements on GD.

14. On October 16, 2017, GD submitted a request for equitable adjustment (REA) in which it disputed the CO's assertions regarding pre-fabrication requirements and concluded that his directives in this regard were a unilateral change to the contract's requirements (R4, tab 3 at 3137-39).

5

15. On January 18, 2018, the CO asserted that 359 items of what was now CFM should have been priced by GD in its proposal to include pre-fabrication efforts (R4, tab 3 at 3153). GD disagreed with this assertion and, instead filed an REA with respect to the CO's direction. It stated that these former items of GFM were cited in the solicitation in their prefabricated form and thus, the Navy was always responsible for these efforts (R4, tab 3 at 3155-56).

16. On March 20, 2018, GD submitted a revised REA seeking $935,458.75 for fabrication efforts relating to RCCs 10G to 27G (R4, tab 3 at 3159-60). On June 12, 2018, GD revised its REA relating to the CO's Letter of Direction dated January 18, 2018. It now sought $785,109 for efforts pertaining to 359 line items at issue. (*Id.* at 3169-70)

17. On June 27, 2018, the CO wrote to GD, informing it that he had rejected the REA of October 16, 2017, and the subsequent REA of June 12, 2018 (R4, tab 3 at 3190-91).

18. On August 23, 2018, GD submitted a certified claim in a total amount of $1,933,018.30 with respect to the fabrication requirements placed on it by the Navy (R4, tab 2)

19. The CO did not respond to GD's claim, and GD appealed on a deemed denial basis.

DECISION

The law governing summary judgment motions is well settled. A motion may be granted if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Raytheon Co.*, ASBCA No. 58212, 15-1 BCA ¶ 35,999 at 175,863. Contract interpretation is a matter of law. If the pertinent contractual language is clear, it controls and resolution by summary judgment is appropriate. *Coast Federal Bank, FSB v. United States*, 323 F.3d 1035, 1040-41 (Fed. Cir. 2003).

In our review, the issues raised by GD's motion are solely those of contractual interpretation and the contract itself is not ambiguous. Thus, the words of the contract must be given their plain and ordinary meaning. *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996).

The government's contentions notwithstanding, the contract, as executed, did not place the burden of pre-fabrication on GD. No such language appears in the contract, and there are no indications in GD's proposal demonstrating that it took on this burden. Indeed, the JFMM, which was applicable to the instant contract, placed

6

the burden on the Navy to insure that GFM was "suitable for its intended use of purposes when the contractor reviews it" (SOF ¶ 7). Further, when the RCCs requiring GD to provide over 11,000 line items of GFM as CFM were issued, they stated that they were "For Pricing Only." In other words, GD was responsible for procuring them; no pre-fabrication requirements were stated (SOF ¶¶ 9, 11). Moreover, it was only after the RCCs had been issued and GD had objected that the CO belatedly stated for the first time that the contract placed the burden on GD, in the base contract, for pre-fabrication GFM. This assertion is not supported by record evidence (SOF ¶ 13).

In its extremely succinct briefing, the Navy cites stray references in the voluminous contractual documents to "fabrication" and argues that these references placed the burden on GD to prefabricate GFM in the base contract (gov't resp. at 5-7). These scattered references are simply inadequate to overcome the weight of record evidence which we have cited. Accordingly, we grant GD's motion and deny the Navy's cross-motion.

## CONCLUSION

The Navy's motion is denied. The appeal is sustained, and is returned to the parties for determination of quantum.

Dated: January 25, 2021

MICHAEL T. PAUL
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

7

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61854, Appeal of General Dynamics - National Steel and Shipbuilding Company, rendered in conformance with the Board's Charter.

Dated:  January 26, 2021

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals