ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| Tanik Construction Company, Inc. | ) ASBCA No. 62527 |
| | ) |
| Under Contract No. W911KB-14-D-0016 | ) |

APPEARANCE FOR THE APPELLANT:     B. Neal Ainsworth, Jr., Esq.
                                                              Ainsworth Law
                                                              Wasilla, AK

APPEARANCES FOR THE GOVERNMENT:     Michael P. Goodman, Esq.
                                                              Engineer Chief Trial Attorney
                                                              Carl F. Olson, Esq.
                                                              Engineer Trial Attorney
                                                              U.S. Army Engineer District, Alaska

OPINION BY ADMINISTRATIVE JUDGE PROUTY

Before us is a government motion for summary judgment premised upon the fact that appellant, Tanik Construction Co., Inc. (Tanik) signed a release, waiving its rights to advance claims on the issues before us.  Tanik does not dispute that it signed the release, but produces three affidavits that it says provides evidence that it signed the release only after being assured that it could still bring a later claim.  Generally, extrinsic evidence of Tanik's intent is forbidden from our consideration by the parol evidence rule, but there are exceptions to this rule, including fraud.  Under the very forgiving standards that apply to raising disputed facts in opposing motions for summary judgment, Tanik has produced enough evidence to avail itself of this defense and avoid summary judgment.

STATEMENT OF FACTS FOR PURPOSES OF THE MOTION

I.   The Contract and Task Order

The United States Army Corps of Engineers (the Corps) awarded the above-captioned contract to Tanik on April 9, 2014 (R4, tab 50 at COE 447[1]).  It was a multiple award task order contract for performing sustainment, restoration, and modernization of various government facilities in Alaska (*id*. at COE 449).

---

[1] The government-provided Rule 4 file is Bates numbered with the prefix "COE" appearing before a six-digit number that begins with zeroes.  Here, we delete the unnecessary zeroes.

A few months after the award of the contract, on September 25, 2014, the Corps awarded Task Order No. 0001 (the TO) to Tanik. The TO was for apron[2] improvements at the Coast Guard Station, Kodiak, Alaska. The amount of the TO was $5,738,047 and it had a completion date of October 1, 2015. (R4, tab 50 at COE 568, 574, 596)

The original scope of the TO required the asphalt apron to be milled by two inches prior to sealing cracks and resurfacing. (SUMF ¶ 2).[3]

On October 2, 2014, Tanik entered a subcontract with Brechan Enterprises to perform the lion's share of the work on the project, including the milling of the existing asphalt and the re-paving. The amount of this subcontract was $4,864,000. (R4, tab 48 at COE 338-39)

## II. Along Comes a Differing Site Condition

### A. Discovery of Paved-Over Metal Tie-Downs and Performance of a Survey to Determine Their Extent

On May 13, 2015, after performance of the TO had begun, Tanik informed the Corps that it had discovered metal tie-downs in the apron that had been paved over by a few inches of asphalt and would adversely affect its ability to mill the asphalt. Characterizing the existence of these hidden tie-downs as a differing site condition, Tanik proposed conducting a ground penetrating radar (GPR) survey to identify the locations of all such tie-downs. (*See* R4, tab 4 at COE 47-48)

The Corps agreed with Tanik that the use of GPR to localize the covered tie-downs and other metal obstructions was appropriate and issued bilateral contract Modification No. P00005 (Mod 5) on August 27, 2015 for Tanik to conduct such a GPR survey (R4, tab 23 at COE 109-10). Mod 5 paid Tanik $480,816 (*id*. at COE 110) and explicitly stated that it did not increase the time to conclude the contract (*id*. at COE 111). Finally, it included a "Closing Statement" providing that:

> The contractor hereby accepts the foregoing adjustment as a final and complete equitable adjustment in full accord and satisfaction of all past, present and future liability originating under any clause in the contract by reason of the facts and circumstances giving rise to this modification.

---

[2] An apron is a hard surface on an airfield for maneuvering and parking aircraft.
[3] SUMF is short for the Statement of Undisputed Material Facts included in the government's motion for summary judgment. Tanik disputes none of these proposed facts and even incorporates them, as a whole, by reference into its brief (*see* app. opp'n at 1), thus we treat them as conceded.

2

(*id*.).

On October 15, 2015, the Corps forwarded to Tanik's president, Ms. Julie Jury, a proposed bilateral contract modification, P00006 (Mod 6), which would extend the time to complete the project (R4, tab 28 at COE 120-21). Ms. Jury executed Mod 6, which included no additional money, but extended the contract completion date by 91 days (R4, tab 29 at COE 123-24). Mod 6 also included identical release language to that in Mod 5 (*id*. at COE 124), but in her cover email forwarding the executed modification, Ms. Jury stated:

> By signing this modification Tanik Construction in no way releases the COE for: Our upcoming (REA) Request for Equitable Adjustment for the discovery of additional tie downs (1825).

(R4, tab 28 at COE 120)

On February 26, 2016, Tanik provided the results of the GPR survey to the Corps (R4, tab 31 at COE 126).

### B. The Parties Negotiate a Contract Change to Address the Tie Down Problem

Having reviewed the GPR survey results, on March 22, 2016, the Corps issued Request for Proposal (RFP) 004 to Tanik, soliciting a proposal for it to complete the apron repairs after a re-design of the project based on the survey results (*see* R4, tab 32 at COE 128-30). In particular, RFP 004 specified that it was for the removal of the following:

1. Ground rods
2. Tie-downs
3. Concrete with and without rebar
4. Unknown objects
5. Dowel bars in concrete that the contractor deems necessary to meet the revised grading plan

(*id*. at COE 128). Nothing in RFP 004 referred to compensation to Tanik for delay or other costs beyond the work specified above (*see* R4, tab 32).

Tanik responded to RFP 004 on April 18, 2016, and submitted a proposal seeking $1,685,015 for the work (R4, tab 33). On June 6, 2016, Tanik submitted to the Corps a revised proposal along with additional back-up information, now seeking $1,910,837 for the work (R4, tab 34 at COE 169, 171).

3

The parties engaged in negotiations (*see* R4, tab 39) and, on July 28[4], 2016, the Corps forwarded Modification No. P00008 (Mod 8) to Tanik for signature (R4, tab 40 at COE 230). Mod 8 included the five different removals noted above for RFI 004 and had other aspects, such as revising the contract to reduce the depth of the milling in certain locations and changes to the "striping" plan (*see id.* at COE 232). Mod 8 increased the contract price by $1,410,000 and added 640 days to the completion date, making it October 1, 2017 (*id.* at COE 233).

Mod 8 also included the following "Closing Statement" (which is identical to the "Closing Statements" in Mod 5 and Mod 6):

> The contractor hereby accepts the foregoing adjustment as a final and complete equitable adjustment in full accord and satisfaction of all past, present and future liability originating under any clause in the contract by reason of the facts and circumstances giving rise to this modification.

(*Id.* at COE 233-34)

### C. Tanik Expresses Unhappiness With the Mod 8 Release but Executes it Anyway

On August 1, 2016, Tanik's project manager, Mr. William Jury, forwarded to the Corps a letter from its subcontractor, Brechan, expressing disagreement with a number of provisions in the proposed Mod 8 (R4, tab 41 at COE 235). In addition to many technical issues, Brechan's letter expressed great displeasure with the "Closing Statement." After referencing that statement, the letter continued:

> This statement is totally inappropriate. We are entitled to a price adjustment on the project to compensate us for delay costs, standby costs, inefficiencies, and other, as yet unidentified costs, resulting from the lack of Owner direction on this project. Our pricing on this mod did not include any

---

[4] The cover letter is dated July 27, 2016, but the Adobe digital signature on the bottom is dated July 28, 2016 (*see* R4, tab 40).

> delay or standby costs. In fact, we were specifically directed to NOT include any of these costs in this modification.
>
> We do not agree to the terms off this modification.

(R4, tab 41 at COE 237)

The parties had a meeting on August 2, 2016 in which they discussed Mod 8 and Tanik discussed with the Corps several matters over which it disagreed on Mod 8. One of the issues with which Tanik continued to have a problem was the Mod 8 Closing Statement (the waiver language). According to a letter from Tanik to the Corps dated August 2, 2016, the Administrative Contracting Officer (ACO) Ze Jong, "explained that the statement applies to this modification only." (R4, tab 58 at COE 1012). Mr. Jong, for his part, sent an email to the CO on August 4, 2016 advancing his opinion that Mod 8 embraced all direct and indirect costs incurred from the original contract completion date until the revised date in October 2017. (R4, tab 59 at COE 1013). Later that day, the CO had a discussion with Ms. Jury and perhaps a few others on behalf of Tanik about Mod 8. Ms. Jury characterized the discussion, in an email sent to the CO on the same day as "incredibly beneficial." The email further inquired how the CO would like "Tanik to proceed with the upcoming REA for items that are directly attributable to poor specifications." (App. opp'n Ex. 5) The record before us does not include a response (if any was made) from the CO. The next day, August 5, 2016,[5] the Corps forwarded to Tanik a revised version of Mod 8 for its signature (R4, tab 42 at COE 243). The revised version made no changes to the $1,410,000 value or the time extension, nor did it alter the "Closing Statement" in any way (R4, tab 42 at COE 244-47). By letter dated August 5, 2016, Ms. Jury returned an executed version of the revised Mod 8 to the Corps. The letter had no conditions or caveats. (R4, tab 43 at COE 291)

Work on the contract was completed on September 24, 2017 (R4, tab 46 at COE 304).

---

[5] The letter is dated the 4th, but the digital signature is dated August 5, 2016 (R4, tab 42 at COE 243)

III.  Tanik Files an REA and Argues That it did not Believe the Release Applied to its REA/Claim

   A.  The REA and Claim

On October 2, 2018[6], a little more than two years after signing Mod 8 and its release, and about a year after completion of the contract, Tanik submitted an REA to the CO (R4, tab 46).  The REA sought payment in the amount of $1,460,431.61 due to the costs stemming from the differing site condition and the Corps' response to it:

> $25,550 in additional costs related to the GPR.
>
> $101,583.12 in "direct costs" to Tanik that were not allowed at the time of the negotiation.
>
> $997,975.82 in extended overhead for both Tanik and Brechan, its subcontractor.
>
> $315,700.88 in equipment standby costs.
>
> $20,419.48 in consultant fees.
>
> $16,797 in increased bonding costs.

(*See* R4, tab 46, at COE 304-05)

Lest there be any ambiguity, these costs were all tied to the differing site condition and the Corps' alleged delay in dealing with it:  the "direct costs" that Tanik sought for itself were costs deleted from its proposal in response to RFP 004 that ultimately became Mod 8; Tanik sought compensation for the "unplanned schedule modification and uncoordinated work" for the time period of May 13, 2015 to August 26, 2015 (the time between its alerting the Corps of the differing site condition and the execution of Mod 5 which directed the first GPR survey); unabsorbed home office overhead from November 3, 2015 to August 4, 2016 while Tanik and Brechan awaited direction from the Corps after completion of the GPR survey; and the equipment standby was about costs incurred while waiting for direction from the Corps about what to do about the differing site condition.  (R4, tab 46 at COE 305)

Although Tanik conceded that it had received $2,190,924 from change orders to address the consequences of the differing site condition, it argued in its REA that:

---

[6] The REA is dated September 12, 2018 (*see* R4, tab 46 at COE 300), but Ms. Jury's signature at the end is dated October 2, 2018 (*id*. at COE 313).

6

> these additional costs only account for the direct costs
> associated with the specific work performed in conjunction
> with the specific change orders and not for indirect costs
> that both Tanik and Brechan absorbed to make certain that
> the equipment and resources were available to complete
> the performance of this contract.

(*Id.*)

On March 29, 2019, the CO denied Tanik's REA, primarily[7] upon the basis that all of the costs sought by Tanik should have been included in the contract modifications, which included the "Closing Statement" waiving future liability from the government (R4, tab 47 at COE 315-16).

After Tanik's lack of success with the REA, its subcontractor, Brechan, was more than a little displeased. Brechan wrote Tanik a letter on April 6, 2019, blaming it for not reserving its rights to advance an REA despite Brechan's July and August 2016 warnings that Mod 8 would be to its disadvantage (R4, tab 48 at COE 442).[8]

Tanik subsequently wrote a letter to the CO on July 8, 2019, essentially resubmitting the previously-denied REA as a claim (*see* R4, tab 48 at COE 317-32). The claim was certified by Ms. Jury in accordance with the CDA (*id*. at COE 332). Moreover, the transmittal letter made a point of addressing the basis for the earlier denial of the REA:

> We were repeatedly assured by the Administrative
> Contracting Officer that an equitable adjustment at the end
> of the project would be the best method to resolve
> outstanding and unresolved financial issues. We attempted
> repeatedly to get the contracting officer to either confirm
> this or direct us differently and he remained non-responsive
> to our multiple requests.
>
> I absolutely did not waive my existing or future rights to
> unknown future liabilities (Ground Penetrating Radar
> Detection (GPR) was still ongoing) and there was no way
> to know how many tie downs would be located. This can

---

[7] A small portion of the REA summing to $4,372 involving "Rapid Gate implementation" was denied on the basis of the sovereign acts doctrine (R4, tab 47 at COE 316). That subject does not appear to remain at issue in this appeal.

[8] This letter was part of the support that Tanik provided for its claim (R4, tab 48 at COE 442).

all be verified by multiple emails sent to the ACO and the
PCO from Tanik Construction.

(R4, tab 48 at COE 317).

The CO denied the claim on February 21, 2020 on the basis that Tanik had waived the claimed costs via bilateral modification (R4, tab 2).

     B.  <u>The Evidence That Tanik Presented in Support of its Contention That it Didn't Agree to the Full Scope of the Release</u>

When the government submitted its motion for summary judgment, Tanik responded with a short opposition that included the affidavits of Mr. Ken Rissew, Mr. Jury and Ms. Jury as well (*see* app. opp'n).[9]

Mr. Rissew does not identify his role in the contract (Rissew aff.), though Mr. Jury's affidavit later identifies him as Tanik's quality control manager (William Jury aff.). Mr. Rissew stated that the government had been notified by Tanik "and its subcontractors" that they "took issue" with the release language included in the contract modifications. Mr. Rissew further stated that "during several meetings with the Government . . . Mr. [J]ong [of the Corps] stated verbally several times to put any disputed costs in the REA." Mr. Rissew's affidavit also included a paragraph that does not quite make sense as written, but the gist of which appears to be that Mr. Jong explained that the REA clause was included in the contract to deal with situations where the parties could not agree but needed to move forward in the contract. (Rissew aff.) Mr. Rissew's affidavit did not identify exactly when these conversations took place, who took part in the specific conversations (except Mr. Jong), or how they related to the contract modifications at issue here (*id*.).

Mr. Jury's affidavit is much more specific. The meat of it is in one paragraph worth quoting directly:

> I distinctly remember a teleconference on the 4th day of
> August 2016 where Tanik and Brechan strongly disagreed
> with the Corps of Engineers on closing language of
> modification 0008. It was at this meeting that apparent
> new ground rules were being set in place by Timothy
> Clapp, the government's procurement contracting officer

---

[9] For convenience we will cite these as Rissew aff.; William Jury aff.; and Julie Jury aff. Unfortunately, Tanik's counsel did not number the paragraphs of the affidavits, so we cannot cite to them as precisely as we would prefer, but these documents are each little more than one page long with respect to their substance.

and Ze Jong the government's administrative contracting officer. We were told to process outstanding unpaid costs under an REA because that was the purpose of the REA clause. Timothy Clapp and Ze Jong were there representing the government. For Tanik there was Julie Jury (owner) Ken Rissew (Quality Control Manager) and myself as the superintendent.

(William Jury aff.)

Ms. Jury's affidavit said even more. Its most salient two paragraphs are reproduced below:

> I . . . would have never signed away our rights to recover under an available clause, in this contract as I have shown repeatedly in e-mail, official correspondence and during meetings for contract modifications. Had Timothy Clapp . . . and Ze Jong . . . not assured me that Tanik and Brechan could recover for this modification under the Request for Equitable Adjustment clause (REA) in a teleconference held on 4 August 2016, this modification would have remained unsigned to this day. . . .
>
> The simple fact is the modification in dispute would NOT have been signed if the Contracting Officer had not provided Tanik with adequate assurance, but more importantly, Tanik took the Contracting Officers words to be a directive to recover under the REA for ALL costs. If you look at the e-mail from the Administrative Contracting Officer to the Procurement Contracting Officer on August 1st, 2016, and the follow up e-mail within 30 minutes of the end of the meeting from me to Timothy Clapp, it's pretty obvious what was said in the meeting.

(Julie Jury aff.)

9

If this were simply a matter of interpreting the waiver clause, we would find it to be unambiguous and find for the government since the parol evidence rule would preclude us from considering the affidavits in this matter. The affidavits, however, make out the case for the Corps having obtained Mod 8 through fraud/misrepresentation, which is an exception to the parol evidence rule. Though Tanik has a long way to go to succeed in this allegation, it has produced enough evidence to preclude summary judgment in favor of the government.

## I. The Standards for Summary Judgment

The standards for summary judgment are well established and need little elaboration here. Summary judgment should be granted if it has been shown that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A non-movant seeking to defeat summary judgment by suggesting conflicting facts "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288 (1968)). Nevertheless, "[t]he moving party bears the burden of establishing the absence of any genuine issue of material fact and all significant doubt over factual issues must be resolved in favor of the party opposing summary judgment." *Mingus Constructors v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## II. The Waiver is Unambiguous

It is also well established that when a contract is unambiguous, we do not consider extrinsic evidence to divine its meaning. *E.g., TEG-Paradigm Envtl., Inc. v. United States*, 465 F.3d 1329, 1338 (Fed. Cir. 2006). Indeed, in the case of an unambiguous contract, not only are we relieved of the obligation to consider such extrinsic evidence, we are generally precluded from doing so. This is the well-known parol evidence rule. *See, e.g., Rumsfeld v. Freedom NY, Inc.*, 329 F.3d 1320, 1327 (Fed. Cir. 2003); *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1434 (Fed. Cir. 1996); *see also Eslin Co.*, ASBCA No. 34029, 87-2 BCA ¶ 19,854 at 100,455.

And here, the waiver language in Mod 8 is unambiguous. It is "final and complete" and covers "all past, present and future liability . . . by reason of the facts and circumstances giving rise to this modification."[10] The existence of the differing

---

[10] The subject has not been briefed, but, with its talk of completeness, the waiver clause also appears to be an integration clause; that is, a statement in the

site condition was the circumstance that led to Mod 8 and the waiver language is similar to language that we found in *Eslin* to be unambiguous. *See* 87-2 BCA ¶ 19,854 at 100,455. Moreover (though Tanik makes no attempt to do so in its response to the government's motion), we do not consider the government's alleged delays in dealing with the differing site condition and the time Tanik's equipment sat idle to be independent from the differing site condition: but for the differing site condition, the government would not have spent time considering Tanik's proposals to address it and Tanik's equipment would have had no reason to be idle. Put another way, the government's actions considering and negotiating the proposals are among the facts and circumstances giving rise to the modification. These costs, then, naturally flowed from the differing site condition, which was the reason for the modification. Hence, by its clear and unambiguous language covering all liability that the Corps owed to Tanik as a result of the differing site condition the aforementioned delay costs were covered by Mod 8.[11] It would seem, then, that the clear language of the contract modification would preclude recovery by Tanik.

### III. Yet, the Evidence Potentially Supports a Fraud Allegation

But almost every rule has exceptions. Upon reading the affidavits, the exception to the parol evidence rule that leaps to mind is that of fraud: if a waiver is secured by fraud, it may be set aside. *See Rumsfeld*, 329 F.3d at 1327; *J.G. Watts Constr. Co. v. United States*, 161 Ct. Cl. 801, 807 (1963) (citations omitted); *Colorado River Materials, Inc. d/b/a NAC Constr.*, ASBCA No. 57751, 13 BCA ¶ 35,233 at 172,991. To prevail in such a case, the contractor must prove that the government made an erroneous representation of material fact and that the contractor honestly and reasonably relied upon it to its detriment. *Colorado River Materials*, 13 BCA ¶ 35,233 at 172,991-92 (citing *T. Brown Constructors, Inc. v. Pena*, 132 F.3d 724, 729 (Fed. Cir. 1997)).

A significant problem here is that Tanik does not mention fraud even once in its opposition to the government's motion. Indeed, the opposition cites no cases, whatsoever, supporting any exception to the parol evidence rule, much less, the fraud exception. A persuasive argument could be made that Tanik has waived this defense, and it is certainly not the job of judges to make parties' arguments for them, nor to search for unarticulated defenses. We share Judge Posner's sentiment that, "[j]udges are not like pigs hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). But, to take the animal kingdom simile slightly further, judges are not ostriches, burying their heads in the sand, either. Where, as

---

document that all of its terms and conditions were contained in the document, itself. *See McAbee*, 97 F.3d at 1434.

[11] This, of course, is why Brechan was so vehemently opposed to Tanik's acceptance of Mod 8's waiver language.

here, the language of the affidavits make clear that the defense is being asserted and the only thing missing is the proper label, we are inclined to recognize it.[12]

The affidavits from Mr. and Ms. Jury both allege that government actors explicitly told them that Tanik would be able to pursue its additional costs through an REA, notwithstanding the release in Mod 8. They were also very clear that they would have never signed the modification without this alleged misrepresentation. The affidavits are also consistent with contemporaneous email inquiring about the means of submitting the REA. Under the rules applying to summary judgment, in which we make every reasonable factual inference in favor of the non-moving party, we find that, though it only meets the bare bones of a fraud defense and that we may be skeptical of Tanik's ability to prove all of the elements of fraud at the hearing, there is enough here to allow Tanik to survive to fight another day and attempt to prove its case.

## CONCLUSION

The government's motion for summary judgment is denied.

Dated: June 7, 2022

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

MARK D. MELNICK
Administrative Judge
Armed Services Board
of Contract Appeals

---

[12] We might look at this very differently at a hearing where the other party is prejudiced by not being placed on notice of the need to provide its own contrary evidence. That is not the case here since additional evidence from the government would not likely change a denial of summary judgment once Tanik produced evidence supporting a *prima facie* case of fraud.

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 62527, Appeal of Tanik Construction Company, Inc., rendered in conformance with the Board's Charter.

Dated:  June 7, 2022

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals